CHARLES T. CARLSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 87564.   Promulgated January 24, 1939.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Henderson A. Melville, Esq.*, for the respondent.

OPINION.

LEECH: The first two issues will be considered together. Is petitioner entitled to deduct any loss for 1934 on his stock in the Bank or because of his payment of $5,000 as the owner of such stock?

Revenue Act of 1934, sec. 23 (e)(2).[1] Petitioner contends he is so entitled on the ground that the stock became worthless and was relinquished by him during that year.

Assuming the stock did become worthless during the tax year, it was not worthless at the close of that year. The Bank was not liquidated but resumed business December 31, 1934. If, at that time, petitioner still retained the right to repossess the stock—and we are not convinced that he does not yet have that right—of course he sustained no deductible loss on the stock during that year. On the other hand, if he actually relinquished his stock in June 1934, when he gave it to the Bank, endorsed in blank with the comment "This stock is of no value to me—do whatever you want with it", or on December 31 of that year, when he refused to accept his 50 shares in the resuming Bank, it is unquestionably true that such relinquishment was wholly voluntary and not compulsory. Cf. *Commissioner* v. *Wright*, 47 Fed. (2d) 871; *Peabody Coal Co.* v. *United States*, 8 Fed. Supp. 845. Petitioner was dissatisfied with the management and operation of the Bank. That he considered the stock worthless is beside the point. Deliberately and entirely of his own volition, he severed, or at least attempted to sever, all his connection with the Bank as a stockholder. If successful, he thus gave up any rights he might have had to the return of his stock without any further payment on his part if and when, under the plan, the obligations the stock was deposited to secure were paid. Cf. *Estate of C. T. Grant*, 36 B. T. A. 1233. But, petitioner had more than that right. Although no stock assessment was made, he had, likewise voluntarily, paid $5,000 to the Bank, in trust, "* * * as a payment of $100.00 per share on said Charles T. Carlson's stock in said bank under said reopening plan hereinbefore referred to * * *" with the understanding that if the Bank failed to resume, then the $5,000 thus paid was to be returned to the petitioner.

We pass the obvious difficulty to petitioner that this money was not actually transferred from the trust to the Bank, as such, until 1935. We assume that the conditions of the trust, under which this transfer was to be made, existed prior to the close of the year 1934, and that petitioner thereafter had no right to this money. This payment, therefore, became an additional cost to petitioner of his stock in the Bank. *In re Park Estate*, 58 Fed. (2d) 965; certiorari

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\* \* \* \* \* \* \*

(e) Losses by Individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\* \* \* \* \* \* \*

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business.

denied, 287 U. S. 646; *First National Bank in Wichita* v. *Commissioner*, 46 Fed. (2d) 283.

Thus, at the end of 1934, except for the possible effect of his voluntary action, during that year, in relinquishing or attempting to relinquish his stock in the Bank, the petitioner would have owned stock in the same Bank of the reduced par value. Such stock was then worth approximately that reduced par. But, unless the stock became worthless during 1934 and was so when the petitioner's alleged relinquishment thereof occurred, no deductible loss was sustained in that year. See *Bair* v. *United States*, 20 Fed. Supp. 191; *Walter W. Moyer*, 35 B. T. A. 1155. Assuming the doubtful conclusion from this record that the stock became worthless in 1934, it certainly is not established that it was so either when petitioner endorsed it in blank and turned it in to the Bank, or when the stock was offered to him in December at the time the Bank reopened and he refused it. The stock was worth its then par at the latter date, as has been found as a fact, and it is little less clear, from the evidence, that the stock was not worthless on the earlier occasion, since, at that time, the plan to reopen the Bank, which had been promulgated in April, was apparently progressing favorably, and, only a month or two thereafter, its license to resume business was issued.

The conclusion is inescapable from this record that, if petitioner possessed no valuable rights in his stock in the Bank at the end of 1934, it was solely because he had made a complete gift of that stock during that year at a time when the stock was valuable or at least not shown to have been worthless. That gift does not support a deductible loss. *Robinson* v. *Commissioner*, 53 Fed. (2d) 810; *Western Maryland Dairy Corporation*, 32 B. T. A. 769; *Mrs. R. B. Lawler, Executrix*, 17 B. T. A. 1083. Respondent is, therefore, sustained on the first two issues.

The last issue is whether petitioner may deduct, as a bad debt, the difference between the face amount and the actual value of the note received by him in lieu of the unpaid portion of his deposit in the Bank. Respondent has limited the deductibility of the admitted loss here, under the provisions of the Revenue Act of 1934, section 117 (a).[2] The propriety of this action is determined by whether the acceptance of this note by petitioner in lieu of the balance on his deposit constituted the "sale or exchange of a capital asset."

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \* \*

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

\* \* \* \* \* \* \*

Respondent supports his action only on the ground that the transaction constituted an "exchange of a capital asset." Upon further consideration of the authorities, particularly that of the case of *James R. Stewart*, 39 B. T. A. 87, we disagree. What happened here was not the transfer of any asset from the petitioner to the Bank in exchange for the note of the subsidiary (cf. *Harry Payne Bingham*, 38 B. T. A. 913; *Betty Rogers*, 37 B. T. A. 897), but was simply a satisfaction of the Bank's debt to him by means of the note. Neither the Bank nor its subsidiary received any asset from the taxpayer. There was, therefore, no "exchange of a capital asset" within the statute. *Hale* v. *Helvering*, 85 Fed. (2d) 819; affirming 32 B. T. A. 356. Accordingly, we hold petitioner is entitled to deduct as a bad debt the full amount of the difference between the face value and the actual value of the note given him by the Bank in satisfaction of his deposit.

*Decision will be entered under Rule 50.*