THE VALUATION SERVICE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96373.   Promulgated April 11, 1940.

*Richard R. Hollington, Esq.*, for the petitioner.

*DeWitt M. Evans, Esq.*, and *Thos. F. Callahan, Esq.*, for the respondent.

## OPINION.

OPPER: As this controversy is presented the difference between the parties narrows to the single question whether for purposes of section 22 of the Act of March 1, 1879,[1] petitioner's separate corporate identity should be disregarded in favor of the view that it and its remote sole stockholder, an insolvent bank, are to be treated as a unit. To state petitioner's position in its own words, it is that "since the assertion of an income tax against The Valuation Service Company would dimin-

---

[1] SEC. 22. That whenever and after any bank has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States, on account of such bank, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall so appear to him, is authorized to remit so much of said tax against insolvent State and savings banks as shall be found to affect the claims of their depositors. [20 Stat. 351.]

ish the assets necessary for the full payment of all depositors of The Guardian Trust Company, the Board should disregard the corporate entity and consider The Guardian Trust Company and The Valuation Service Company as one and the same enterprize, and, therefore, immune from taxation under the Act of Congress of 1879,[2] * * *."

Despite such anomalous adjudications as *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330, *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898 (C. C. A., 3d Cir.), and *Munson Steamship Line* v. *Commissioner*, 77 Fed. (2d) 849 (C. C. A., 2d Cir.), it must be recognized that corporations are ordinarily organized for the purpose of being treated as distinct from their shareholders, and that they should be so treated. *Burnet* v. *Commonwealth Improvement Co.*, 287 U. S. 415. This result is the more necessary where the application to overlook distinctive corporate existence is submitted in behalf of those responsible for the situation to which we are asked to close our eyes. *Mississippi River & Bonne Terre Railway*, 39 B. T. A. 995, 1003. See *United States Fidelity & Guaranty Co.*, 40 B. T. A. 1010. It is "when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud or defend crime".[3] that the usual and normal view of corporate individuality may be set aside. Needless to say it is ordinarily difficult, if not impossible, for the corporation itself or its sponsors to bring its situation within that description.

The rule to be applied in such circumstances as these has recently been formulated by the Supreme Court in the following language:

* * * In the *Commonwealth Improvement Company* case, the taxpayer, for reasons satisfactory to itself voluntarily had chosen to employ the corporation in its operations. A taxpayer is free to adopt such organization for its affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.

On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. * * * [*Higgins* v. *Smith*, 308 U. S. 473.]

If the true party in interest here were this petitioner or even its ultimate sole stockholder, the bank, the matter could readily be disposed of by applying to this dispute the principle announced in the early portion of that quotation. But it is apparently accepted as a fact by respondent that the actual loss, if this proceeding is deter-

---

[2] This statute was amended by section 818, Revenue Act of 1938, but petitioner places no reliance on the amended language, saying in its reply brief: "For the purpose of this brief we * * * rest our case solely on section 22 of the Act of 1879, 20 Stat. 327 [*sic* 351], or its counterpart, section 22A, as amended by the Revenue Act of 1938."

[3] *United States* v. *Milwaukee Refrigerator Transit Co.*, 142 Fed. 247, 255.

mined adversely to the petitioner, will fall upon the depositors of the bank. His position is that if this petitioner were the bank itself he would have no question as to the applicability of the 1879 Act. It is thus inadmissible to conclude that the present petition to treat corporation and stockholder as an essential unit is advanced for the benefit of either. Hence we think it incumbent upon us to look further in order to apply here that view on the disputed issue which "best serves the purposes of the tax statute."

It is self-evident that the objective of the enactment in question, both in its original form and as amended, was to assist and benefit depositors of insolvent banks. As the Court of Claims says in *Johnston* v. *United States*, 17 Ct. Cls. 157, the provision "was passed for the undoubted purpose of relieving depositors in national banks from the payment of certain taxes, not assessed upon them, but upon the banks of which they are only customers; taxes which, under the preexisting law, they would indirectly be obliged to pay when a bank is so insolvent that all its capital is gone and it has nothing left with which to pay taxes, except the money of its depositors." It is clear that the depositors are no more responsible for the present situation than they were for the tax deficiencies of the bank itself. They were not the organizers of petitioner, they had no voice in its management and no direct interest in its affairs. They are in danger, however, of being the innocent victims of circumstance. For, if respondent is successful in this proceeding, the entirely collateral element of the form of petitioner's organization as a separate corporation, instead of as the bank's real estate department, will result in denial to the depositors of that relief which it seems evident it was the purpose of Congress to afford; relief which they would have obtained without question in the absence of petitioner's intervening presence.

In that view we can not avoid the conclusion that it will most nearly effectuate the evident legislative purpose to treat these taxes as being due only "on account of such bank"; to treat petitioner and the bank as parts of a single organization, all of whose assets are subject to the claims of the bank's depositors, and whose unforgiven liabilities will inevitably diminish those assets; and so to apply the statute as to find that there is no deficiency in tax due from this petitioner under its terms.

As respondent points out, it is not the purpose of the relevant legislation to relieve those having a proprietary interest in the bank from their appropriate tax liability. *Jackson* v. *United States*, 20 Ct. Cls. 298. But even if there were a possibility under the facts here that such a result might eventuate, the danger is eliminated by the pro-

visions of the 1938 Amendment,[4] leaving open the ultimate liability of those governed by the statute until the outcome of liquidation is apparent.

Neither party seeks to question the Board's jurisdiction by reason of the unusual language of the section under consideration; and in any event that point has already been passed upon in favor of our power in the premises. *West Town State Bank*, 32 B. T. A. 531; *Republic Bank & Trust Co.*, 36 B. T. A. 680.

*Decision will be entered for the petitioner.*

---

[4] SEC. 818. TAXES OF INSOLVENT BANKS.

\*        \*        \*        \*        \*        \*        \*

(c) Any such tax so collected shall be deemed to be erroneously collected, and shall be refunded subject to all provisions and limitations of law, so far as applicable, relating to the refunding of taxes, but tax so abated or refunded after the date of the enactment of the Revenue Act of 1938 shall be reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid. The running of the statute of limitations on the making of assessment and collection shall be suspended during, and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax which has been abated may be reassessed and collected during the time within which, had there been no abatement, collection might have been made.