## UNITED STATES v. BURROWS BROS. CO.
### No. 9248.

Circuit Court of Appeals, Sixth Circuit.

Feb. 9, 1943.

Newton K. Fox, of Washington, D. C. (Samuel O. Clark, Jr., and Sewall Key, both of Washington, D. C., and Don C. Miller and F. B. Kavanagh, both of Cleveland, Ohio, on the brief), for appellant.

Karl K. Morris, of Cleveland, Ohio (E. G. Rarey and Wm. H. Holsinger, both of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Appellee taxpayer, the Burrows Brothers Company, obtained judgment in the district court for recovery, with interest, of an income tax deficiency assessment, collected by the Commissioner of Internal Revenue by reason of his disallowance of a bad-debt loss claim made by the taxpayer on its Federal income tax return for the fiscal year ending February 28, 1935.

From the stipulation of facts upon which trial was had in the district court, it appears that the appellee company rented space in a building owned by the New England Company, the entire capital stock of which was owned by the Guardian Trust Company, which last-named corporation was taken over for liquidation, in June 1933, by the Superintendent of Banks of Ohio who was managing and operating the insolvent trust company pursuant to the laws of Ohio.

Having a claim against the Guardian Trust Company for approximately $49,000, on account of unpaid deposits, the appellee taxpayer, by agreement in writing, transferred to the New England Company $22,441.58 of such deposit claim, for a consideration of $11,220.79, and deducted on its income tax return for the year involved the remaining $11,220.79 as a bad debt. The agreement provided that the $11,220.79 purchase price of the claim should be paid by crediting, in stipulated instalments, that total sum upon rent due or accruing to the New England Company from the appellee, for the storeroom, mezzanine and basement occupied by appellee in The Guardian Building, at 633-637 Euclid Avenue, Cleveland, Ohio. The appellee expressly released the right to set off rents, presently or thereafter owing to the New England Company, against either the deposit of $22,441.58 transferred to the New England Company or the retained balance of appellee's claim for funds on deposit in the Guardian Trust Company.

The Commissioner of Internal Revenue disallowed the deduction of the full amount of $11,220.79 as a bad debt lost by the appellee from the transaction described; and, under the provisions of Section 117(d) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 708, limited the deductible loss to $2,000.

The district court rejected the Commissioner's contention. Finding that the New England Company was merely an instrumentality of the Guardian Trust Company and had acted as agent of the latter in the transaction from which the final amount of the bad debt was determined, and that this sum was a debt owed to the taxpayer by the Guardian Trust Company, which had defaulted and was in liquidation; that the transaction was in reality a compromise of mutual obligations between the taxpayer and the Guardian Trust Company by which the former surrendered and lost its right to enforce a claim of set-off against the bank for a part, as well as the retained balance, of its deposit, the district court held the net result to be that the taxpayer's loss was a bad debt and deductible as such, and not a capital loss by a sale or exchange of capital assets.

The pertinent provisions of the Revenue Act involved in this case are quoted in the footnote.[1]

[1] Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 671: "§ 23. Deductions from Gross Income. In computing net income there shall be allowed as deductions: * * * (f) Losses by Corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. * * * (k) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a

774

1. The first point of the argument for reversal of the judgment of the district court is that there was a fatal variance between the grounds stated in the rejected claim of appellee for refund of taxes and the grounds alleged in its suit brought to recover the same.

■■ It is undeniable that the grounds of a suit for recovery of taxes must be the same as those presented in the claim for refund. It is true, also, as asserted by appellant, that the statutory basis for allowing a deduction for losses under Section 23(f) of the Revenue Act of 1934 is separate and distinct from the basis of allowance of a deduction for bad debts under Section 23(k) of the Act. The sections are mutually exclusive. See Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Ronald Press Co. v. Shea, 2 Cir., 114 F.2d 453.

■ But upon the record here there appears no justification for the Government's contention that the basis of recovery set up in appellee's suit varied, as a matter of fact, from the basis of its claim for refund filed with the Collector of Internal Revenue. On the face of the refund claim, attention was expressly invited to the revenue agent's report for the year in question, and it was stated that there was attached to the report the taxpayer's original and supplemental reasoned protests. Unfortunately, neither the revenue agent's report nor the taxpayer's protests are incorporated into the record upon this appeal. But, in the complaint of appellee

filed in the cause, it is alleged that the claim for refund requested that the paid deficiency assessment be refunded with interest "for the reason that the deductions as *bad debts* in plaintiff's return filed for the fiscal year ending February 28, 1935,. in the amount of $11,220.79, were such deductions as allowed by law and that the deduction of only $2,000 for capital loss as allowed by the Commissioner of Internal Revenue was erroneous and not supported by law." [Italics ours.]

Moreover, it is alleged in another paragraph of the complaint that the Commissioner's "disallowance of the taxpayer's loss from *bad debts* in the amount of $11,-220.79 was erroneous and contrary to law." [Italics again ours.] In the answer of appellant, these fact allegations were admitted, with the denial only that the disallowance of the deduction claimed by the taxpayer was erroneous.

The Commissioner of Internal Revenue, in refusing the taxpayer's refund claim, evidently had before him the same insistence of the taxpayer as was made in the instant suit and based his disallowance of the claim for refund upon his reasoning that the taxpayer's loss resulted from the sale or exchange of a capital asset. The first point, made by appellant, is therefore not well taken.

■■ 2. Appellant next contends that there is no proof in the record that the alleged bad debt was charged off within the taxable year. It is well settled that, for purposes of the Revenue Act, a debt may be deducted as worthless only when

---

debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction."

"§ 117. Capital Gains and Losses. (a) General Rule. In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

"100 per centum if the capital asset has been held for not more than 1 year;

"80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

"60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

"40 per centum if the capital asset has

been held for more than 5 years but not for more than 10 years;

"30 per centum if the capital asset has been held for more than 10 years.

"(b) Definition of Capital Assets. For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *

"(d) *Limitation on Capital Losses.* Losses from sales or exchanges of capital assets shall be allowed only to the extent of $2,000 plus the gains from such sales or exchanges. * * * "

it is shown (1) that it was ascertained to be worthless, and (2) that it was charged off within the taxable year. See Fairless v. Commissioner of Internal Revenue, 6 Cir., 67 F.2d 475, 477, and cases there cited. Moreover, this court pointed out in the Fairless case that "since deduction for bad debts may not be had unless claimed in the return, and since the return is invariably made after the close of the taxable year, to hold the claim of deduction equivalent to the required charge-off would be to render nugatory the statutory requirement"; and said, further, that "it was clearly the purpose of the Congress to condition allowance of deduction for bad debts upon the perpetuation of evidence that they were ascertained to be worthless within the taxable year, and upon some specific act of the taxpayer clearly indicating their abandonment as assets." Cf. Santa Monica Mountain Park Co. v. United States, 9 Cir., 99 F.2d 450, 455.

But again the argument of the Government must fall for lack of a factual basis to support it. In its answer, the appellant admitted the allegations of paragraph VII of the complaint, which averred that the deficiency had been erroneously asserted "on the basis of a disallowance of *bad debts which were charged off on plaintiff's books* and which were proper and legal deductions from taxable income under the prevailing and existing Internal Revenue Laws. * * *" [Italics ours.]

It does not appear that the examining revenue agent, the Commissioner of Internal Revenue, or any other agent of the United States ever questioned that the bad debt claimed as a deduction was charged off on the books of appellee within the taxable year. The record reveals no determination by the Commissioner that the bad debt claim was not properly charged off on the books of the appellee; and this case, therefore, does not present a situation where the taxpayer is attempting to overturn the correctness of the Commissioner's determination of fact. The point urged here was not made in the trial court. The argument against the allowance of the loss claim of appellee had been based, prior to this appeal, entirely upon the ground that the loss should be limited to two thousand dollars, by reason of the alleged applicability of section 117 (d) of the Revenue Act of 1934. That was the distinct ground upon which the Commissioner based his ruling. There is no room for reasonable inference that the appellee actually failed to deduct on its books during the taxable year the bad debt loss which it subsequently claimed in its income tax return. On the contrary, the plain inference is that an actual charge-off was seasonably made.

(3) The final contention made by the Government is that the appellee taxpayer, by the transaction heretofore narrated, sold a capital asset, with the consequence that the amount of its deductible loss is limited by statute to two thousand dollars. It is urged that, from the statutory definition of "capital assets" as meaning "property held by the taxpayer (whether or not connected with his trade or business)," the sale of appellee's deposit account, which resulted in the loss claimed, should be classified as the sale of a capital asset.

Among the authorities, the case which would seem to be nearest in point, Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819, 821, by analogy rejects the argument of the Government. The compromise of notes for less than face value, with a maker able to pay them, was held not to be a sale or exchange of capital assets within the meaning of the Revenue Act. The Court of Appeals for the District of Columbia said: "There was no acquisition of property by the debtor, no transfer of property to him. Neither business men nor lawyers call the compromise of a note a sale to the maker. In point of law and in legal parlance property in the notes as capital assets was extinguished not sold. * * * If the full satisfaction of an obligation does not constitute a sale or exchange neither does partial satisfaction."

The Board of Tax Appeals, now the United States Tax Court, has recognized the right of a bank depositor to treat his deposit as an indebtedness and non-payment thereof as a worthless debt for tax purposes. Charles T. Carlson v. Com'r, 39 B.T.A. 185. See, also, Norman Buckner v. Com'r, 43 B.T.A. 958.

While it may be conceded that for tax purposes the separate entity of corporations is generally recognized, Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L. Ed. 406, and other cases, holding that there is no compulsion upon the Treasury Department to acquiesce in a taxpayer's election to do business as a corporation

in a manner most advantageous to him, do not support the Government's position in the present controversy. We do not confront here a taxpayer seeking to escape tax liability through dealing with a corporate organization created by him as in the Higgins and other cases, but we meet a situation where the taxpayer dealt at arm's length with a wholly owned corporate subsidiary of a banking corporation indebted to him, on account of money deposited.

Recent decisions in November 1942, of three United States Circuit Courts of Appeals, cited by appellant, are not considered in point. Palcar Real Estate Co. v. Commissioner of Internal Revenue, 8 Cir., 131 F.2d 210, merely appropriately applied the principle of Higgins v. Smith, supra, to wholly differentiable facts from those found here. In Maurice Levy v. Commissioner of Internal Revenue, 2 Cir., 131 F.2d 544, the debt involved was admittedly a capital asset at the time of its sale. In Commissioner of Internal Revenue v. Moline Properties, Inc., 5 Cir., 131 F.2d 388, 389, an individual, as a means of protecting his investments in Florida real estate, conveyed several properties to a corporation, the stock of which was issued to him. The Board of Tax Appeals was held in error in sustaining the contention of the corporation that its corporate existence must be disregarded in taxing gains from sales of the property, and in permitting the individual stockholder to report as his individual income the proceeds from the corporate sales. The Court of Appeals declared that both the individual stockholder and his corporation must accept the tax disadvantages of the plan adopted, and that "they may not now, in order to escape corporate taxes, be heard to disavow the corporate existence and allege that the respondent was merely a 'dummy' corporation." Higgins v. Smith, supra, was cited. It is obvious that there is no real resemblance, in principle or in fact, between the Fifth Circuit case and the case at bar.

The decision of the Board of Tax Appeals in Valuation Service Company v. Commissioner of Internal Revenue, 41 B.T.A. 811, lends strength to the insistence of the appellee taxpayer that the actions of the subsidiary New England Company were, in effect, the actions of its sole stockholder, the Guardian Trust Company.

The conclusion has been reached that the district court correctly held that the credit on rent allowed to appellee by the subsidiary of the Guardian Trust Company did not constitute, in the circumstances, the sale or exchange of a capital asset of the taxpayer, and that the unpaid remainder of the bank deposit transferred as consideration for the rental credit was a debt ascertained to be worthless and charged off during the taxable year, for which the appellee is entitled to the full amount of the deduction claimed.

The judgment of the district court is, accordingly, affirmed.