Nadi Frances Wheeler, James D. Newton, and Robley D. Newton, as Trustees of the Wheeler Building Tile Company, Inc., a dissolved corporation v. Commissioner. Estate of Howard L. Wheeler, by Nadi Frances Wheeler, Administratrix v. Commissioner.
Wheeler v. Commissioner
Docket Nos. 110262, 110263, 110264.
United States Tax Court
1943 Tax Ct. Memo LEXIS 260; 2 T.C.M. (CCH) 247; T.C.M. (RIA) 43277; June 9, 1943
*260 Harold A. Kooman, Esq., 801 First Federal Bldg., St. Petersburg, Fla., for the petitioners. F. L. Van Haaften, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, duly consolidated, involve the redetermination of deficiencies in income and excess profits taxes, and of transferee liability as follows: 1938
1939
Docket
Income
Income
Excess
No.
Tax
Tax
Profits Tax
110262
$594.03
$1,646.46
$428.64
110263 *
594.03
1,646.46
428.64
110264
38.57
31.89
None
The principal issue for decision affects all three docket numbers. It is whether, as determined by the Commissioner, certain royalties collected by Wheeler Building Tile Co., Inc., are taxable to it, or whether, as alleged by the petitioners, the amounts so collected constitute income of Howard L. Wheeler, and after his death income of his estate. If decision thereof be in the respondent's favor, Wheeler's administratrix, the petitioner in docket No. 110263, admits liability of the estate as transferee. In docket No. 110264, the administratrix assigns as additional error the Commissioner's treatment of amounts withdrawn *261 by Howard L. Wheeler from Wheeler Building Tile Co. Inc., as dividends received, and the disallowance of deductions claimed on the 1939 return filed for Howard L. Wheeler, for interest and taxes alleged to have been paid by him. We adopt and incorporate herein by reference the stipulation of facts filed by the parties. Such parts thereof as are necessary to an understanding of the issues are included in our findings of fact, made also from other evidence. Findings of Fact The petitioners in docket No. 110262 are the trustees of Wheeler Building Tile Co., Inc., a corporation organized and formerly existing under the laws of Florida, but dissolved on October 31, 1941. The corporation returns for the taxable years were filed with the collector for the district of Florida. The petitioner in docket numbers 110263 and 110264 is the administratrix of the estate of Howard L. Wheeler, deceased, who died a resident of Fort Myers, Florida, on July 31, 1939. The decedent's income tax returns for both of the taxable years were filed with the collector for the district of Florida. In 1927 Howard L. Wheeler, hereinafter sometimes referred to as Wheeler, made application to the United States *262 Patent Office for a patent on a hollow tile invented by him for use in building, and in March 1929, he made application for a patent on a "Tile Wall Construction" invented by him. Patent No. 1,803,158 his first sued to him on April 28, 1931, under his first application, and Patent No. 1,968,728 was issued on July 31, 1934, under the application of March 1929. After making the applications, but before either patent was issued, Wheeler decided that he could deal with brick and tile manufacturers more advantageously through the medium of a corporation than he could as an individual. For that purpose, on June 16, 1930, he organized the Wheeler Building Tile Co., Inc., hereinafter sometimes referred to as the corporation. The corporation had an authorized capital stock of 100 shares of common stock of the par value of $100 each. Wheeler subscribed for 98 shares, Claude Ogilvie for 1 share, and W. B. Seabrook for 1 share. The subscriptions of Ogilvie and Seabrook were made to meet the requirements of the Florida corporation laws, their shares being in fact the property of Wheeler. The certificate of incorporation of Wheeler Building Tile Co., Inc., provided that its business should be, *263 among other things, the acquisition and disposition of letters patent and the granting of licenses under any letters patent. It was not intended, however, that the corporation acquire title to the patents to be issued to Wheeler under his aforementioned applications. No interest in the patents was assigned to the corporation, and no assignment or other writing affecting either of them was ever recorded in the United States Patent Office. Upon Wheeler's death, they were inventoried as assets of his estate in an inventory and appraisement filed by his administratrix in the County Judge's Court of Lee County, Florida. Subsequent to the issuance of the patents, the corporation executed numerous contracts with manufacturers granting licenses to manufacture brick and tile thereunder. The form of agreement for use in this connection was prepared by Claude Ogilvie, who was also Wheeler's attorney. Several drafts were submitted before one satisfactory to Wheeler was found. The form finally adopted designated Wheeler Building Tile Co., Inc., "licensor," and contained the following recital: THAT WHEREAS, the Licensor is now the sole owner of all rights under certain inventions, patents and applications *264 for Letters Patent of the United States relating to Building Tile and Blocks in the below-recited territory, including the following Applications and Patents: Practically all of the license contracts were made on that form, and provided for the payment of specified royalties by the licensees to the corporation as licensor. Printed forms were forwarded monthly to the licensees for certification by them to the corporation of their sales of material manufactured under the contracts. Royalty checks were customarily made payable to the corporation, in amounts shown to be due by the licensee's reports, and were deposited in the bank account maintained in the name of the corporation. Printed booklets advertising the patented articles were mailed to brick and tile manufacturers in 1930, and similar booklets were mailed during 1936 or 1937 to most of the manufacturers holding license contracts. On the back cover of the first booklets was printed the indorsement, "Agents for Patentee" and directly under those words the name "Wheeler Building Tile Co., Box 1342 - Fort Myers, Fla." Substantially the same indorsements were printed on the title page of the booklets issued in 1936 or 1937. Wheeler *265 was elected president of the corporation at its first meeting of directors, and he retained that office until his death. He personally carried on nearly all dealings with tile manufacturers in connection with the granting of licenses and operation under the license contracts. Some of the licensees had the understanding that Wheeler owned the patents and that he merely employed the corporation as a means of furthering sales. At the time of incorporation of Wheeler Building Tile Co., Inc., Wheeler asked Charles A. Varner, a bookkeeper with whom he was acquainted, to open a set of books for the corporation. Wheeler, himself, had no knowledge of bookkeeping or accounting. He told Varner that the capital of the corporation was to be $10,000; that organization expenses amounted to about $250; and that the corporation had office furniture worth about $90, and machinery and tools worth about $660. Varner told Wheeler that the sum of those amounts was only $1,000 and that another debit of $9,000 would be needed to offset the capital entry. Wheeler told him that what he was interested in was having books so that he would know what money was coming to him, and that so far as the opening entries *266 were concerned Varner should "set up anything" and "fix it up any way." Knowing of the applications for the patents, Varner, of his own motion and without Wheeler's express approval, determined to assign $9,000 to patent rights in order to balance the opening entries. Accordingly, he made the following journal entries: June 16, 1930
Preliminary Expenses -
Organizing Corp.
$ 250.00
Office Equipment
90.00
Machinery and Tools
660.00
Patent Rights
9,000.00
Sundry Assets
$10,000.00
To distribute assets entered
in lump sum total
A ledger account was set up on the books under the caption "Patent Rights." Thereafter, the bookkeeping was done by W. B. Seabrook until the end of the year 1940. The books were lodged in an office maintained by Seabrook for his own business. From 1934 on, the name Wheeler Building Tile Co., Inc., appeared at the entrance to Seabrook's office. The corporation contributed nothing toward the rent of the office until after about 1934. Seabrook kept the books in accordance with the manner in which they were originally set up, so that royalty payments due from the licensees appeared as accounts receivable of the corporation. Cash withdrawals *267 made by Wheeler were debited in part to salaries and in part to an accounts receivable control account. By the end of 1937, about $15,000 of the withdrawals had been thus entered in the accounts receivable control account. An offsetting credit balance in surplus account amounted, at that time, to about $17,500. On the balance sheets filed with the corporation's income tax returns for the years 1930 to 1937, inclusive, appeared an asset item for patent rights, valued thereon at $9,000, less a reserve for depreciation or depletion. The returns from 1934 to 1937 were prepared by Seabrook. Wheeler never discussed with Seabrook the manner in which the books were kept, nor gave him any instructions as to how they should be kept. In 1938, an agent of the Bureau of Internal Revenue examined the income tax returns of the corporation, and Wheeler's personal returns. Following the examination, the agent submitted a report recommending that the corporation be taxed as a personal holding company, and asserting an additional tax liability of approximately $11,000. Wheeler retained an accountant to represent him in the matter, who discovered that the books of the corporation were not in keeping *268 with the facts, as stated to him by Wheeler, to the effect that he and not the corporation owned the patents, and that the income therefrom was his own. Upon learning of the manner in which the books had been kept, Wheeler instructed the accountant to make correcting entries. In the latter part of 1938, adjusting entries offsetting the years prior to 1938, and other entries adjusting those made prior to that time in 1938, were made. Amounts previously withdrawn by Wheeler which had been entered in the accounts receivable control account were eliminated therefrom, and accumulated surplus was reduced accordingly. The accountant instructed Seabrook to charge subsequent withdrawals by Wheeler to the latter's personal account rather than to treat any part of them as creating accounts receivable of the corporation. Thereafter, Seabrook followed these instructions. The purpose of the change in system was to show that royalties collected were income of Wheeler and not of the corporation. Wheeler Building Tile Co., Inc., never actually issued any stock certificates until August 28, 1939, subsequent to Wheeler's death. On that date a certificate for 98 shares was issued to Nadi Frances Wheeler *269 as administratrix of the decedent's estate, and certificates for 1 share each were issued to Ogilvie and Seabrook. On May 10, 1941, the administratrix filed a petition in the County Judge's Court of Lee County, Florida, reciting the decedent's ownership of the patents and of the stock in the corporation, averring that for many years the corporation had acted as Wheeler's licensing agent under the patents without the formality of a written agreement, but with Wheeler's knowledge and consent, and praying that the licenses so issued be ratified and confirmed and the corporation be appointed as licensing agent for the future. An order granting the prayers of the petition was signed by the County Judge on the same day. At a directors' meeting on May 16, 1941, the president of the corporation was authorized to accept a proposal of the administratrix that the corporation be so appointed as the licensing agent. On the corporation income tax returns filed for 1930 and 1931, the corporation's business was stated to be "royalties from patent rights;" on the 1932 return it was stated to be "agents for patentee, selling manufacturing rights, on Royalty Basis;" on the returns for 1933 to 1939, *270 inclusive, it was stated to be "agents for patentee." On the returns for 1930 to 1937, inclusive, income from royalties was reported as income of the corporation; on each return a deduction was claimed for salary of Wheeler as president. On the returns for 1938 and 1939 no income was reported and no deductions were claimed. Wheeler's individual returns for 1935, 1936 and 1937 reported as his only income from the corporation, the amount of $5,000 in each year as salary. The amounts so reported corresponded with the salary deductions claimed on the corporation returns. During 1938 and until his death in 1939, Wheeler withdrew substantially all royalties collected by the corporation over and above the expenses of managing the patents. The amounts so withdrawn were reported as his individual income, on the 1938 return in the amount of $10,365.99, and on the 1939 return filed by his administratrix in the amount of $10,205.48. After Wheeler's death, during the remainder of 1939, substantially all net royalties were paid to his estate. On the individual return for 1939, filed by the administratrix, a deduction of $228.91 was claimed, representing interest of $210.70 alleged to have been *271 paid by Wheeler on taxes erroneously assessed against the corporation for 1937 and prior years, and the exchange costs of $18.21 on royalty checks from Canadian licensees. On the same return a deduction of $10.45 was also claimed for Social Security taxes alleged to have been paid by Wheeler for the corporation. The respondent determined that royalties were taxable to the corporation, and after allowing salary deductions of $5,000 for 1938, and $2,916.67 for 1939, that the corporation had net income of $4,752.24 in the former year and $12,724.25 in the latter. Withdrawals by Wheeler have been determined to be taxable to him as dividends, and amounts reported on the individual returns as income from royalties have been eliminated. The deductions for interest and taxes claimed to have been paid by Wheeler have been disallowed. The amount of Wheeler's withdrawals is not in dispute. Opinion DISNEY, Judge: The petitioners contend that Wheeler Building Tile Co., Inc. was merely the agent of Howard L. Wheeler, that its separate identity should be disregarded for tax purposes, and that the royalties collected by it should be considered Wheeler's income. The contention is met at the outset *272 by the general rule that the separate identity of a corporation must be respected, and that it is only in "exceptional situations," New Colonial Ice Co. v. Helvering, 292 U.S. 435; "unusual cases," Burnet v. Commonwealth Improvement Co., 287 U.S. 415; or when there are "peculiar circumstances," North Jersey Title Insurance Co. v. Commissioner, 84 Fed. (2d) 898, that it may be disregarded. As we said in Valuation Service Co., 41 B.T.A. 811, 814: "Needless to say it is odinarily difficult, if not impossible, for the corporation itself or its sponsors to bring its situation within that description." To what unusual or exceptional circumstances can the petitioners point here in support of their position? There is Wheeler's ownership of all the stock, but it is settled that the identity of interest of the corporation and its stockholder, arising out of the latter's complete stock ownership, is not alone sufficient to justify departure from the general rule. Burnet v. Commonwealth Improvement Co., supra;Dalton v. Bowers, 287 U.S. 404. *273 There exists also the further fact that Wheeler retained the title to the property which was the source of the income in question. But in our opinion, that circumstance is of slight weight where, as here, the corporation had a place of business, kept books of account, owned some other assets, had its own bank account and actually operated as a going business for several years. It is argued that in its advertising it represented itself as agent of the patentee. Assuming the significance of such representations, we think that their effect is more than overcome by the definite representations to the contrary contained in the license contracts. Moreover, as we regard the facts, Wheeler's property in the patents consisted of nothing more than a bare legal title. From the time he formed the corporation in 1930, until the latter part of 1938, he treated it as the owner of the patents and permitted it so to deal with them, and so to represent itself to its licensees and to the business world. He may have been ignorant of bookkeeping principles, but he certainly could not have been unaware of the fact that the corporation was paying taxes in every year on income from property which, it is *274 now claimed, was always his own. For tax purposes, at least, the patents must be regarded as the property of the corporation. The order of the County Judge on May 10, 1941 is not an adjudication as to title. Very evidently that question was not an issue in that proceeding. The petitioners argue that the corporation was formed because Wheeler thought it advantageous in negotiating license contracts to deal through the medium of a corporation; that he completely controlled its acts, and withdrew from it practically all net royalties. But that the purpose for which a corporation is formed is of less bearing on this issue than is the fact that it was formed and did operate as a corporation is shown by the Supreme Court's statement in Higgins v. Smith, 308 U.S. 473, that: * * * A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages. Wheeler's domination of corporate affairs and the withdrawal by him of most of its profits are facts which are found in the case of nearly all one-man corporations. They are therefore of no more significance *275 than is his sole ownership of the stock, and as he has been pointed out, that circumstance is not controlling. The petitioners place considerable reliance upon Southern Pacific Co. v. Lowe, 247 U.S. 330. In that case the Supreme Court disregarded the separate identity of a wholly-owned corporation, and stated that the bookkeeping treatment given a transaction is not controlling where identity between corporation and stockholder does in fact exist. The case was stated by the Court to turn upon its "very peculiar facts." In the very recent case of Moline Properties Inc. v. Commissioner, 319 U.S. 436. The Supreme Court, referring to Southern Pacific Co. v. Lowe, 247 U.S. 330, and Gulf Oil Corp. v. Lewellyn, 248 U.S. 71, also heavily relied upon by the petitioners, said that they "have been recognized as such exceptions but held to lay down no rule for tax purposes." The contention in that case was not essentially different from that in the instant case, for a sole stockholder urged that the corporate entity of his corporate creation be disregarded, urging, as *276 here, that there was mere agency. Of the purpose of the corporation the Court says: "* * * so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." The court there says that the corporation was "created by Thompson for his advantage and had a special function from its inception." Here too, as petitioner argues, the corporation was set up for the advantage of the petitioner in disposing of his products. What the Court says of the agency might well be said here: "There was no actual contract of agency, nor the usual incidents of an agency relationship." Though in the cited case the corporation kept no books or bank account, and the stockholder paid expenses for it, the argument for disregard of corporate entity was denied. The facts here, in our opinion, more clearly require such denial. Under the Moline Properties case, the petitioners' prime argument that the formation of the corporation was because of advantage to Wheeler, is fatal to their contention. Having reaped such advantage, he could not disavow the means used. The corporation did what it was intended *277 to do - it transacted business. It may not with consistency be ignored when the point of taxation of the results of business is reached. We hold that the respondent's determination that income from patent royalties is taxable to Wheeler Building Tile Co., Inc., is proper. The adjustments made to income reported on its returns allow deductions for salary paid to Wheeler at the rate of $5,000 per year, the same amount which had been claimed upon the returns filed for the years immediately preceding the taxable years. The reasonableness of the amount not having been questioned, the determination in this respect is therefore also sustained. The petitioners have agreed that Wheeler's actual withdrawals from the corporation were in the amounts determined by the respondent. The petitioner's allegation that Wheeler made payment of interest, taxes and other business expenses in amounts of $228.91 and $10.45 is denied in the answer. No evidence was submitted on the issue thus joined. Though respondent's counsel stated at the hearing that those amounts have been allowed in the 1939 audit and the deficiency notice of the corporation, we may not assume from that statement that the allegation *278 as to the fact of payment by the petitioner is admitted. Therefore deduction of the $228.91 and $10.45 is denied for lack of proof. The respondent determined that the amounts withdrawn by Wheeler from the corporation are, to the extent that they exceed the amounts considered to be salary, taxable to him as dividends. We agree. Decision will be entered for the respondent. Footnotes
*. Transferee liability.↩