225 F.2d 629
 Leo SANDERS and Jessie H. Sanders, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Leo SANDERS, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Jessie H. SANDERS, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
T. Coleman ANDREWS, Commissioner of Internal Revenue, Arthur L. Fleming, District Commissioner of Internal Revenue for Oklahoma and Texas, and Earl R. Wiseman, Director of Internal Revenue at Oklahoma City, Oklahoma, Appellants,
v.
Leo SANDERS and Jessie H. Sanders, Appellees (two cases).
 Nos. 4968-4970.
 No. 5024.
 No. 5070.
 United States Court of Appeals Tenth Circuit.
 August 17, 1955.
 Rehearing Denied September 30, 1955.
 
 COPYRIGHT MATERIAL OMITTED Herman J. Galloway, Washington, D. C. (Dan Moody and John E. Marshall, Washington, D. C., on the brief), for appellant.
 Homer R. Miller, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., on the brief), for Commissioner.
 Before BRATTON, HUXMAN and PICKETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 These cases grow out of deficiencies in income taxes, penalties and interest for the years 1943, 1944, 1946 and 1949 assessed against Leo Sanders and his wife, Jessie H. Sanders.[1] Jeopardy assessments and liens were then filed. On January 26, 1953, the taxpayers filed a declaratory judgment action in the United States District Court for the Western District of Oklahoma against the Commissioner, the District Commissioner, and the Director of Internal Revenue for the District of Oklahoma in which they sought to quiet title in the taxpayers to certain property, to cancel certain liens, and to enjoin the collection of income taxes for the year 1949 upon the grounds that the taxes had been compromised and settled. On February 3, 1953, the taxpayers sought a redetermination of the income tax deficiency in the United States Tax Court. The principal question in the Tax Court and District Court cases was whether a settlement between the United States and the taxpayers of the amount due under a construction contract included a settlement of the taxpayers' liability for income taxes on the amount paid to them. The Tax Court held that it did not, 21 T.C. 1012, and the District Court, after overruling an objection to its jurisdiction, held that the settlement did include any liability for income taxes on the amount received. Sanders v. Andrews, D.C., 121 F.Supp. 584. The questions presented grew out of the same facts, and the cases were consolidated on appeal. We have concluded that the decision of the Tax Court that the settlement did not include the taxpayers' liability for income taxes is correct. It is therefore unnecessary to consider the jurisdiction of the District Court.
 
 
 2
 Leo Sanders had been engaged in the general contracting and construction business for many years. He kept his books on the accrual method of accounting. On June 6, 1942, he entered into a contract with the United States under which he agreed to do certain construction work in connection with the Oklahoma Aircraft Assembly Plant at Oklahoma City, Oklahoma. He completed the job early in 1943. During the construction period, considerable changes were made in the plans and specifications, and there were demands that much of the work be accelerated. As a result, the cost of construction was greatly increased and Sanders made claims for additional compensation. It was determined that some of the claims were justified, and Congress appropriated over $1,600,000 to adjust them.
 
 
 3
 To prevent the running of the statute of limitations, Sanders brought an action in the United States Court of Claims against the United States and sought a judgment for $2,254,420.37. The purpose of the action was to recover an amount alleged to be due on the construction contract. The Department of Justice took charge of the defense of the case. The complaint was not predicated upon a claim for taxes of any character. Representatives of the Department of Justice conferred with the taxpayer, his attorneys and accountants. It was conceded that the United States was indebted to Sanders, and an investigation was made to determine the amount and to verify the cost figures prepared by Sanders' auditor. During this investigation, an examination of Sanders' tax records and returns was made. During the investigation, an attorney for the Department of Justice told Sanders that upon receipt of any settlement money he would have a tax problem and that he should employ a good tax lawyer. On June 29, 1949, after extensive oral negotiations, a settlement was effected under which the United States agreed to pay Sanders $955,101.71, in full settlement of his claims. Sanders' offer to accept this sum stated:
 
 
 4
 "I hereby offer to accept the sum of $954,100.00, which includes bond premium of $14,100.00, in full settlement of all claims which are included in the above entitled suit and of all claims growing out of Contract W-957-eng-968 and of the construction of the Oklahoma Aircraft Assembly Plant near Oklahoma City, Oklahoma. To this should be added the payment of retained percentage in the amount of $1,001.71, making a total of $955,101.71."
 
 
 5
 The United States, through the Attorney General's office, accepted this offer in a letter which stated in part:
 
 
 6
 "Please be advised that the acceptance of your offer to compromise and the filing with the Court of Claims of your Motion to Dismiss the petition, which has been furnished this Department to be held in escrow pending receipt by you of the amount mentioned above, covers all claims arising out of the contract whether or not they are set forth in the petition."
 
 
 7
 On June 30, 1949, Sanders and an officer in the Army Engineer Corps, acting for the United States, signed a supplemental agreement which modified the original contract in accordance with the compromise settlement agreed upon between the parties and which stated:
 
 
 8
 "Upon payment of the above amount agreed to as a compromise settlement, and retained percentage in the amount of $1,001.71, all matters between the Contractor and the Government arising by reason of or in connection with Contract No. W-957-eng-968 will have been settled, and, the contractor hereby releases the Government from any and all claims now filed or to be filed in the future, arising from or in connection with Contract No. W-957-eng-968, as amended."
 
 
 9
 Upon receipt of the settlement money, Sanders dismissed his action with prejudice.
 
 
 10
 On September 15, 1950, Leo Sanders filed a tentative income tax return for 1949 which did not include the amount received under the settlement. Thereafter, an agent of the Bureau of Internal Revenue insisted, without success, upon the filing of a completed return. In 1952, the Commissioner determined that the amount Sanders received from the settlement was income, and assessed a deficiency with penalties and interest. Jeopardy assessments, distraint and tax liens were filed against the property of Sanders. On September 12, 1952, Sanders and his wife filed a joint return for 1949 in which the amount received in the settlement was reported as a capital gain. A capital gain tax of $247,694.44 was paid. Sanders testified that this return was made at the suggestion of the Director of Internal Revenue for Oklahoma, who stated that he believed that the property would be released upon such payment. At the time the liens were filed, the Commissioner requested proper officials of the United States to withhold from Sanders the payment of $49,279.23, which was admittedly due on another contract, and apply the amount on the taxes owing.
 
 
 11
 We think that there is a total lack of evidence to show that the settlement of the contractual claims which Sanders was asserting against the United States included a settlement of the income taxes which would be due on the amount received under the settlement. When the settlement was made, no taxes were due. No mention of income tax liability was made in any of the written documents. The evidence relied upon to sustain the position of the taxpayers was the testimony of Sanders and his assistant. They relate to observations which appear at most to be the expression of opinion by an attorney for the Department of Justice to the effect that there would be no income taxes due.[2] The taxpayer discussed the matter with the Deputy Attorney General and made no mention to him that his tax liability was also to be settled. The taxpayers' auditor was present when the final settlement was agreed upon, and he was not told that the settlement would include a release of liability for income taxes. All of the investigations and the negotiations between the parties were carried on to determine the amount due Sanders for services in performing the contract. The complaint in the litigation which was settled by the agreement asked only for a judgment in the sum due for services performed under the contract. When that amount was agreed upon and paid, it was income the same as though the sum had been specified in the contract. There is clearly no basis for holding that the oral statement of an attorney for the Department of Justice was sufficient to constitute a contract to relieve the taxpayers of payment of income taxes on the amount received.
 
 
 12
 Sanders testified that he would not have accepted the settlement had he known that the amount received thereunder was to be taxable. Even if this were true, there is no evidence that any one representing the United States agreed that the important item of income tax was to be settled. Neither Sanders nor his attorney and accountants claimed that the taxes were included in the settlement until long after its execution. In the 1952 return and in a letter written in October, 1952, Sanders' tax attorney referred only to the question of whether the income could be considered as a capital gain.
 
 
 13
 Furthermore, there was no tax dispute and even if the settlement was intended to include tax liability, it did not have the approval of the Commissioner, Secretary or Under Secretary of the Treasury, or any Assistant Secretary of the Treasury, and no question of tax liability had been referred to the Department of Justice for prosecution or defense.
 
 26 U.S.C.A. § 3761 provides:
 
 14
 "(a) Authorization. The Commissioner, with the approval of the Secretary, or of the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General may compromise any such case after reference to the Department of Justice for prosecution or defense.
 
 
 15
 "(b) Record. Whenever a compromise is made by the Commissioner in any case there shall be placed on file in the office of the Commissioner the opinion of the General Counsel for the Department of the Treasury, or of the officer acting as such, with his reasons therefor, with a statement of —
 
 
 16
 "(1) The amount of tax assessed,
 
 
 17
 "(2) The amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and
 
 
 18
 "(3) The amount actually paid in accordance with the terms of the compromise."[3]
 
 
 19
 Inasmuch as there was no tax dispute referred to the Department of Justice here, the only compromises authorized by the Revenue Act are those approved by one of the Treasury officials named in the statute. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; Anderson v. P. W. Madsen Inv. Co., 10 Cir., 72 F.2d 768; Bank of New York v. United States, 3 Cir., 170 F.2d 20; Joyce v. Gentsch, 6 Cir., 141 F.2d 891; Brast v. Winding Gulf Colliery Co., 4 Cir., 94 F.2d 179; Leach v. Nichols, 1 Cir., 23 F.2d 275.
 
 
 20
 It is equally well established that the United States may not be estopped by the unauthorized acts of its agents nor may such agents waive the rights of the United States by their unauthorized acts. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; Wilber National Bank of Oneonta v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; United States v. Fitch, 10 Cir., 185 F.2d 471; United States v. Chickasha Cotton Oil Co., 10 Cir., 115 F.2d 135.
 
 
 21
 The alleged statements attributed to the Department of Justice attorney to the effect that Sanders would have no taxes to pay, were made orally. The attorney testified that he had absolutely no authority delegated him under which he could advise anyone that he would not have to pay income taxes.[4] This testimony, as it relates to his authority, is uncontradicted and undoubtedly true.
 
 
 22
 Assuming that the attorney made these statements, they came during the period of negotiations prior to the execution of the written settlement in which no reference to relief from taxes was made. The written words are unmistakably clear that the provisions relating to release from any and all claims growing out of the contract had to do only with obligations of the United States to Sanders by virtue of the contract. Oral statements may be considered to ascertain the subject matter of a written contract or to explain its terms, but they are not admissible to create an additional undertaking. State of Maryland v. Baltimore & O. Railroad Company, 22 Wall. 105, 89 U.S. 105, 22 L.Ed. 713; Nash v. Towne, 5 Wall. 689, 72 U.S. 689, 18 L.Ed. 527; Cohen v. New England Mut. Life Ins. Co., 7 Cir., 140 F.2d 1, certiorari denied 322 U.S. 744, 64 S.Ct. 1153, 88 L.Ed. 1576; Jordan v. Hall-Miller Drilling Co., 10 Cir., 203 F.2d 443; Lawrence v. Keokuk Steel Casting Co., 10 Cir., 162 F.2d 929; American Crystal Sugar Co. v. Nicholas, 10 Cir., 124 F.2d 477.
 
 
 23
 It is contended that the language used in the settlement documents which stated that all claims made in the Court of Claims action and all other claims growing out of the construction contract were settled, was broad enough to include any liability for income taxes. Such inclusion cannot be found in the words themselves. Income taxes do not arise from or grow out of the contract. They arise by operation of the Internal Revenue Statutes. Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312.
 
 
 24
 There is no merit to the taxpayers' contention that if the amount received is taxable, it should be treated as a capital gain and the tax computed under the provisions of 26 U.S.C.A. § 117(a) (4). The sum which Sanders received from the government was not derived from the "sale" or "exchange" of a capital asset as used in the statute, but was a compromise settlement of amounts claimed for the services rendered. The petition of the taxpayers in the Court of Claims so alleged. The settlement had none of the elements of a "sale" or "exchange" of property. Under the decisions, Section 117(a) (4) is inapplicable. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310; Roscoe v. Commissioner, 5 Cir., 215 F.2d 478; Thal v. Commissioner, 6 Cir., 142 F.2d 874; Gruver v. Commissioner, 4 Cir., 142 F. 2d 363; United States v. Burrows Bros. Co., 6 Cir., 133 F.2d 772; Burger-Phillips Co. v. Commissioner, 5 Cir., 126 F.2d 934; Bingham v. Commissioner, 2 Cir., 105 F.2d 971.
 
 
 25
 The settlement of the litigation and the belated payment to Sanders represented a sum due him for work performed under the terms of the contract. This was gross income as defined by the Revenue Act. 26 U.S.C.A. 1939 Ed. § 22 (a). The object of the suit was to recover for this work. If the sum had been paid when due, it would have represented ordinary income. The fact that the sum was recovered in a lawsuit or in the settlement of a lawsuit does not change the character of the income regardless of the intervening time. The income must be considered in the light of the claim from which it was realized. Commissioner of Internal Revenue v. Goldberger's Estate, 3 Cir., 213 F.2d 78; Mathey v. Commissioner, 1 Cir., 177 F.2d 259, certiorari denied 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359; Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 173 A.L.R. 553; Swastika Oil & Gas Co. v. Commissioner, 6 Cir., 123 F.2d 382, certiorari denied 317 U.S. 639, 63 S.Ct. 30, 87 L. Ed. 515; Cf. Commissioner of Internal Revenue v. Wodehouse, 337 U.S. 369, 393, 69 S.Ct. 1120, 93 L.Ed. 1419; Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830; Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168; Sunray Oil Co. v. Commissioner, 10 Cir., 147 F.2d 962, certiorari denied 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982.
 
 
 26
 Prior to the enactment of the Community Property Statute of Oklahoma, 32 O.S.A. § 51 et seq., Sanders had purchased various pieces of construction machinery and equipment which were his separate property and which he used in his construction business. During the years 1946, 1947, and 1948, some of this machinery and equipment was sold. Sanders and his wife each reported one-half of the long-term capital gain from the sale of this property, and each claimed a deduction for one-half of the depreciation sustained on the property for those years, under Section 23(a, l) of the Internal Revenue Code of 1939. 26 U.S.C.A. 1939 Ed. § 23(a, l). The Commissioner and the Tax Court held that the full amount of the capital gains derived from the sale of the separately owned property was taxable to Sanders, and allowed depreciation on the basis of one-half to Sanders and one-half to his wife, as claimed in their returns.
 
 
 27
 Sanders does not question the Commissioner's action in holding that the full amount of the capital gains should be taxed to him, but contends that since he was required to report all the capital gains from his separately owned property, he should be entitled to all the depreciation on this property. The Tax Court in upholding the action of the Commissioner relied upon Stewart v. Commissioner, 5 Cir., 95 F.2d 821. That case holds that under the Texas Community Property Statute, Vernon's Ann.Civ.St. Tex. art. 4619, which is similar to that of Oklahoma, the income from the wife's separate estate is community property and deductions constituting expenses, depreciation, interest, and taxes pertaining to the wife's separate property must be equally divided between the husband and wife. This is a distinct disadvantage to the spouse owning all the property, but as the Tax Court stated in the instant case, "The petitioners must take the tax disadvantages along with the tax advantages pertaining to taxpayers living in community property states." We find no error in the court's ruling. Commissioner of Internal Revenue v. Wilson, 5 Cir., 76 F.2d 766; Commissioner of Internal Revenue v. Terry, 5 Cir., 69 F.2d 969.
 
 
 28
 The Tax Court upheld the Commissioner in the assessment of penalties and interest because of failure to file returns within the statutory periods. Section 291(a) of the 1939 Code provided: "In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate." 26 U.S.C.A. 1939 Ed. § 291 (a).
 
 
 29
 Under the provisions of the statute the penalties provided for are mandatory unless it is shown that the failure to file a return was due to reasonable cause and not willful neglect. Commissioner of Internal Revenue v. Lane-Wells Co., 321 U.S. 219, 64 S.Ct. 511, 88 L.Ed. 684; Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Cedarburg Canning Co., v. Commissioner, 7 Cir., 149 F.2d 526; Fides, A. G. v. Commissioner, 4 Cir., 137 F.2d 731, certiorari denied 320 U.S. 797, 64 S.Ct. 266, 88 L.Ed. 481; J. K. McAlpine Land & Development Co. v. Commissioner, 9 Cir., 126 F.2d 163; Logan Coal & Timber Ass'n v. Helvering, 3 Cir., 122 F.2d 848; West Side Tennis Club v. Commissioner, 2 Cir., 111 F.2d 6, certiorari denied 311 U.S. 674, 61 S.Ct. 40, 85 L.Ed. 434; Noteman v. Welch, 1 Cir., 108 F.2d 206.
 
 
 30
 The burden of establishing that the failure to file a return was due to reasonable cause is upon the taxpayer. Hatfried, Inc. v. Commissioner, 3 Cir., 162 F.2d 628; Paymer v. Commissioner, 2 Cir., 150 F.2d 334; Blenheim Co. v. Commissioner, 4 Cir., 125 F.2d 906; Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843, certiorari denied 314 U.S. 699, 62 S.Ct. 479, 86 L.Ed. 559; Tinkoff v. Commissioner, 7 Cir., 120 F.2d 564; Plunkett v. Commissioner, 1 Cir., 118 F. 2d 644.
 
 
 31
 Reasonable cause has been defined as ordinary business care and prudence. Treas.Reg. 103, Sec. 19.291-1; Heywood Lumber & Mining Co. v. Commissioner, 2 Cir., 178 F.2d 769; Southeastern Finance Co. v. Commissioner, 5 Cir., 153 F.2d 205.
 
 
 32
 Whether the taxpayer has met the burden of proof imposed upon him is a question of fact for the tax court. Commissioner of Internal Revenue v. Lane-Wells Co., supra; Hatfried, Inc., v. Commissioner, supra; Credit Bureau of Greater N. Y. v. Commissioner, 2 Cir., 162 F.2d 7; P. Dougherty Co. v. Commissioner, 4 Cir., 159 F.2d 269, certiorari denied 331 U.S. 838, 67 S.Ct. 1515, 91 L.Ed. 1850; Southeastern Finance Co. v. Commissioner, supra; Paymer v. Commissioner, supra; Fides, A. G. v. Commissioner, supra.
 
 
 33
 The taxpayers filed tentative or skeleton returns which contained no detailed information as to income or deductions. The completed returns were not filed until a number of years after the due date. The taxpayers' books were not posted and an effective audit could not be made. The last payments from the United States were received by Sanders in 1949, and a return was not filed until September of 1952, after notice of deficiencies had been given and the liens had been filed. The record discloses sufficient evidence to sustain the decisions of the Tax Court in upholding the assessment of penalties and interest.
 
 
 34
 The Commissioner requested the General Accounting Office to withhold the payment of any sums which were due the taxpayers on other contracts. It is clear that the United States has the same right as any creditor to apply unappropriated moneys in its possession toward the payment of debts due it. 31 U.S.C.A. §§ 44, 71, 74; United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022; McKnight v. United States, 98 U.S. 179, 25 L.Ed. 115; United States v. American Surety Co. of N. Y., 5 Cir., 158 F.2d 12. The taxpayers are entitled to have credited on the taxes due, all amounts which have been paid and such sums due them which have been withheld.
 
 
 35
 The Tax Court decisions in Nos. 4968, 4969, and 4970 are affirmed.
 
 
 36
 The judgments of the District Court for the Western District of Oklahoma in Nos. 5024 and 5070 are reversed.
 
 
 
 Notes:
 
 
 [1]
 Mrs. Sanders is involved in these cases because of her interest under the community property laws of Oklahoma
 
 
 [2]
 One of these statements was alleged to have been made while Sanders and the attorney were traveling from Tulsa to Washington; another, over the telephone in Washington; and a third during the meeting in Washington at which the attorney, Sanders, his assistant, and one of his auditors, were present. In relating what the attorney said relating to taxes, the assistant testified that during the negotiations in Washington just prior to the final settlement, "Mr. Palmes said there will be no negotiation, there will be no taxes. This looks to me like an excellent settlement for you." The auditor testified that reference was made to renegotiation but he heard nothing about income tax
 
 
 [3]
 All functions of all officers of the Department of the Treasury, and all functions of all agencies and employees of such Department, were transferred, with certain exceptions, to the Secretary of the Treasury, with power vested in him to authorize their performance or the performance of any of his functions, by any of such officers, agencies, and employees. 1950 Reorg.Plan No. 26, Secs. 1 and 2 effective July 31, 1950, 15 F.R. 4935, 64 Stat. 1280, 5 U.S.C.A. § 133z-15 note. The Commissioner of Internal Revenue, and the General Counsel for the Department of the Treasury, referred to in this section, are officers in the Treasury Department
 
 
 [4]
 The attorney testified as follows:
 "Q. And did you hear Mr. Sanders state that you told him that he would not have any income taxes to pay? — A. Yes, I heard that testimony.
 "Q. Did you make that statement? — A. I positively did not make the statement.
 "Q. You are sure, there can be no question about it? — A. There is no question about that. If you want me to explain why I say that I will do it.
 "Q. Why are you sure you did not make the statement?
 * * * * *
 "The Witness: In the first place, taxes were not involved in this claim. We, in the Claims Division, never handled any taxes in dispute. That part was turned over to the tax division. I knew nothing whatsoever about Mr. Sanders' taxes. I had no authority in so far as the trial attorney of Justice was concerned to bind the attorney general or anyone else.
 "All I could do would be to recommend and the higher-ups could agree with me or disagree with me. On occasions they have disagreed with me. I had absolutely no authority delegated to me under which I would have any right whatsoever to tell any claimant that he would not have to pay any income taxes.
 "Furthermore, I should say this, that I had no idea about what Mr. Sanders' tax structure was. There would be no way in the world for me to tell or to evaluate the amount of taxes that I might take into consideration in reaching a settlement."