245 F.2d 582
 57-2 USTC P 11,702
 Marguerite FERRANDO and Fred Ferrando, co-executors of the
Last Will and Testament of Mario Ferrando, deceased; Edward
Ferrari and George Ferrari, co-executors of the Last Will
and Testament of Luigi Ferrari, deceased, Appellants,
v.
UNITED STATES of America, Appellee.
 Nos. 15256, 15257.
 United States Court of Appeals Ninth Circuit.
 June 7, 1957.
 
 Henry W. Howard, San Francisco, Cal., for appellants.
 Charles K. Rice, Asst. Atty. Gen., Robert N. Anderson, Marvin W. Weinstein, David O. Walter, Attys., Dept. of Justice, Washington, D.C., Lloyd H. Burke, U.S. Atty., Lynn J. Gillard, Asst. U.S. Atty., San Francisco, Cal., for appellee.
 Before POPE, LEMMON and HAMLEY, Circuit Judges.
 LEMMON, Circuit Judge.
 
 
 1
 A former newsboy who sold papers at the very corner where stands the building in which this Court sits in San Francisco, and who is now one of the appellants in the instant case--
 
 
 2
 A handwritten check with a false typewritten date--
 
 
 3
 An admittedly defective Federal estate tax return filed 'just under the wire' before its due date--
 
 
 4
 These are some of the highlights disclosed by the record in these two appeals.
 
 1. Statement of the Case
 
 5
 These are appeals from final judgments, entered on June 22, 1956, holding that the appellants, plaintiffs below, take nothing by their complaints, which sought the recovery of penalties collected by the appellee in connection with Federal estate taxes pursuant to the provisions of 26 U.S.C.A. § 3612(d)(1), 1940 Edition, infra.
 
 
 6
 Notices of appeal were filed on July 17, 1956.
 
 2. Statement of Facts
 
 7
 (a) Estate of Ferrando (No. 15256)
 
 
 8
 The appellants Marguerite Ferrando, hereinafter Mrs. Ferrando and Fred Ferrando, hereinafter Fred, are the surviving spouse and the son, respectively, of Mario Ferrando, who died in San Francisco, California, on April 20, 1947.
 
 
 9
 Within a few days after the death of Mario Ferrando, the appellants employed Lloyd J. Cosgrove as their attorney. Mr. Cosgrove had represented the decedent in legal matters and had drawn the latter's last will and testament.
 
 
 10
 On February 13, 1948, these two appellants were appointed coexecutors of the last will and testament of Mario Ferrando.
 
 
 11
 The federal estate tax return in the instant case was required to have been filed not later than July 20, 1958, or 'within 15 months after the date of death'. Section § 821(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. 821(b), 1940 Edition; Code of Federal Regulations, Title 26, § 81.63, 1949 Edition. Actually, these appellants did not file their return until on or about February 8, 1949, or more than six months after the 'due date'.
 
 
 12
 On or about February 15, 1949, Mr. Cosgrove asked Fred to make out a check in payment of the estate tax, saying that he would arrange to have it picked up. An interesting check was prepared. In Fred's handwriting, the stub showed that it was written on February 17, 1949. The check was for $14,525.69, with the Collector of Internal Revenue as the payee, and was signed 'F. Ferrando'. The entire check was in Fred's handwriting-- except the date, which was typewritten, and read 'July 15, 1948', or exactly five days before the due date of the Ferrando estate tax, supra.
 
 
 13
 Fred testified that he did not insert the clearly false date; that he made out the check at Mr. Cosgrove's request; that he did not remember whether Mr. Cosgrove asked him to leave the date blank, or why he did not insert the date when he drew the check; and that the date on the stub would indicate when the check was actually drawn.
 
 
 14
 Fred further stated on the stand that he first became aware of the fact that the spurious date had been inserted in the check at the 'first trial', meaning 'the criminal trial involving Mr. Cosgrove'. See Cosgrove and Doyle v. United States, 9 Cir., 1955, 224 F.2d 146.
 
 
 15
 Finally, Fred testified that he didn't recall whether he left the date blank because he 'merely failed to put the date in', or because he 'deliberately left it out', or because Mr. Cosgrove told him to leave it out. He had 'no recollection about it whatsoever'. Fred added, however, that it was not his practice to omit the dates from checks.
 
 
 16
 In any event, the estate tax return itself was prepared by Prior and McClellan, a firm of certified public accountants whom Mr. Cosgrove employed in the late fall of 1948.
 
 
 17
 Regarding the tardy filing of the return, Mr. Cosgrove testified that he telephoned to Paul Doyle, the Chief Office Deputy Collector of Internal Revenue at San Francisco, that he would be unable to file the return on time because of the 'pressure of business in the office'. Mr. Cosgrove's testimony continued:
 
 
 18
 'I was then told to bring in the return when I did have time to prepare it and file it. I consider that (quite unilaterally.) an indefinite extension of time to file it.'
 
 
 19
 This conversation, according to Mr. Cosgrove, occurred 'Prior to the date that the Federal estate tax return was to be filed.'
 
 
 20
 Fred testified that his first knowledge that the return was filed late and that there was a probability that penalties would be imposed was 'The day that the Internal Revenue man called me'.
 
 
 21
 Mrs. Ferrando is an Italian woman who came to this country from Montevideo, Uruguay, in 1900, and arrived in San Francisco at the age 'of ten or eleven'. Her formal education did not extend beyond the eighth grade of grammar school in San Francisco. She testified that she signed papers and otherwise discharged her duties as executrix of the estate by doing 'Anything Mr. Cosgrove told (her) to do'.
 
 
 22
 Fred's situation, however, was far different from that of his mother. In their brief, the appellants tell us merely that 'From an early age he worked in his father's concrete contracting business and carried it on after his (father's) death'; and that he 'grew up in the Mission District (in San Francisco) and did not himself complete high school.'
 
 
 23
 The appellants' picture of Fred's participation in the affairs of his father's business even during the father lifetime is not an adequate one.
 
 
 24
 On cross-examination, Fred testified that he had been in the concrete business with the elder Ferrando for fifteen years; that he was his father's partner, and 'handled everything'. This, according to Fred's testimony, included 'estimating', 'bidding on jobs', 'ordering * * * materials', 'payment of bills', and, generally, 'running the office'. As they would say on Fred's Mission Street, 'he ran the works'.
 
 
 25
 In his testimony, however, Fred was careful to exclude 'making the tax returns' from his multifarious duties as his father's managing partner. He swore that he left the making of the tax returns to his 'accountant'.
 
 
 26
 (b) Estate of Ferrari
 
 
 27
 The appellants Edward and George Ferrari, brothers, hereinafter Edward and George, are the sons of Luigi Ferrari who died in San Francisco on August 2, 1946. The father's last will and testament was admitted to probate on August 30, 1946, and on the same day the appellants were appointed co-executors of the will.
 
 
 28
 They employed Mr. Cosgrove as counsel for the estate. George testified that the attorney 'told us he would handle the estate and then he would tell us from time to time what to give him and we would bring down to him, like deeds and insurance papers and leases on the property and anything we can find of any value to the estate.' From time to time Mr. Cosgrove requested various documents connected with the estate.
 
 
 29
 The Federal estate tax return of the Ferrari estate became due on November 2, 1947, or, as we have seen, fifteen months after the father's death. The time was duly extended in writing according to Treasury Department Regulation 105 until December 2, 1947.
 
 
 30
 Mr. Cosgrove told the Ferrari brothers that the tax would amount to about $100,000, that if it was not paid on the due date it would bear interest of six per cent.
 
 
 31
 Prior to the expiration of the thirty days' extension, the appellants signed a Federal estate tax return, which was admittedly incomplete and inaccurate. The return itself indicated that it was signed on October 31, 1947, or two days before the original due date. Mr. Cosgrove left this defective return at the office of the Internal Revenue Bureau, in care of Mr. Doyle.
 
 
 32
 At about that time Mr. Cosgrove engaged the services of Prior & McClellan, who prepared another return. That second document was reviewed by another attorney, who prepared a third draft.
 
 
 33
 But the end of the labyrinth of returns was not yet. Perhaps the testimony of Mr. Cosgrove can be the Ariadne's thread that will guide us out of the maze:
 
 
 34
 '* * * from the two of them-- the two returns that were prepared by outsiders-- the one, and the one that was prepared by me originally, I prepared another return; from the first, the second one, and the third one.
 
 
 35
 'Now, whether or not I used some of the sheets of that first one in the preparation of the fourth one, I can't tell you, I don't know, but all I can say is this: I don't know if Mr. Ferrari re-signed another one or not, but I can say they signed one and they signed this last one that has been filed.'
 
 
 36
 This 'four-star final' estate tax return was filed on April 22, 1949-- a mere sixteen months and twenty days late, and nearly three years after the death of Luigi Ferrari.
 
 
 37
 Edward testified that he did not know Doyle, and had no contact with any member of the staff of the Internal Revenue Bureau during the administration of the estate. George said that he first became aware of the fact that federal estate tax was due fifteen months after his father's death, 'Some time in 1948', when his next door neighbor told him.
 
 
 38
 As we shall see in a moment, mere reliance upon an attorney to handle the technical details of the administration of an estate does not excuse the regularly appointed executors for such inattention regarding simple and fundamental matters of which even an untutored layman should be aware.
 
 
 39
 And neither George nor Edward was untutored.
 
 
 40
 Like Fred Ferrando, the appellant in No. 15256, the Ferrari brothers are successful products of the Mission District of San Francisco-- 'south of Market', as Edward puts it. George, the former newsboy, 43 years old at the time of the trial, attended Saint Charles Parochial School in the District, and was graduated from the Galileo High School. Edward went to grammar school south of Market Street, and attended Galileo High for eighteen months, but was not graduated.
 
 
 41
 In their brief, it is stated that these brothers 'have earned their livelihood by hard physical labor', and their 'manual' work is stressed. Nevertheless, they are not day-laborers, but prosperous business men. Their activities, as they themselves tell us, consist of buying vegetables in the wholesale market in San Francisco, and personally delivering them to the restaurant trade.
 
 
 42
 Six or seven months before the death of Luigi, the father, a third brother, Anthony, who also had taken part in the family enterprise, died. After the death of the father 'the entire burden of the business fell upon the shoulders of these Appellants'.
 
 
 43
 The appellants take pains to point out that 'Prior to the death of Luigi Ferrari, neither of these appellants had ever acted in the capacity of a co-executor nor had they any connection with the probate of estates of decedents'. But one does not have to be a professional co-executor or a probate lawyer to know that taxes have to be paid when they are due.
 
 
 44
 And, as we shall see presently, this duty of vigilance and promptness is not a delegable one, so far as an executor is concerned. It is personal.
 
 
 45
 3. The Applicable StatuteSection 3612(d)(1) of Title 26 U.S.C.A. (1940 Edition) reads as follows:
 
 
 46
 '(d) Additions to tax
 
 
 47
 '(1) Failure to file return. In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax: Provided, That in the case of a failure to make and file a return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after August 30, 1935, then there shall be added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate.'
 
 
 48
 4. The Burden of Establishing That the Failure of File a Return Was Due to Reasonable Cause Is upon the Taxpayer.
 
 
 49
 A glance at the foregoing statute discloses that unless it is shown that the failure to file a return was due to reasonable cause and not willful neglect, the penalties provided for are mandatory. Sanders v. Commissioner, 10 Cir., 1955, 225 F.2d 629, 636, certiorari denied, 1956, 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839, and many cases there cited.
 
 
 50
 In the Sanders case, supra, the Court said:
 
 
 51
 'The burden of establishing that the failure to file a return was due to reasonable cause is upon the taxpayer. (Many cases cited.)
 
 
 52
 'Reasonable cause has been defined as ordinary business care and prudence. (Cases cited.)
 
 
 53
 'Whether the taxpayer has met the burden of proof imposed upon him as a question of fact for the tax court. (Many cases cited.)'[1]
 
 
 54
 5. Whether the Appellants' Failure to File Proper Returns 'Was Due to a Reasonable Cause' Was Primarily an Issue of Fact for the Trial Court to Decide.
 
 
 55
 As to all the appellants in the two cases, the Court below found that they knew that a Federal estate tax return was required to be filed, and that an estate tax must be paid; that they made no attempt to determine whether their attorney was acting with diligence in preparing and filing such returns, or whether such returns had in fact been filed; that the appellants' conduct failed to discharge their duty in the premises; that they were guilty of willful neglect in failing to determine whether their attorney was acting with diligence in these matters; and, finally, that the appellants' failure to file a Federal estate tax return was not due to reasonable cause.
 
 
 56
 We have already summarized the testimony in some detail, and no useful purpose would be subserved by laboring this point further.
 
 
 57
 In Coates v. Commissioner, 8 Cir., 1956, 234 F.2d 459, 462, Judge Sanborn observed:
 
 
 58
 'If the issue tried and determined was an issue of fact for the Tax Court and not an issue of law for this Court, there can be no reversal, even though we may not agree with the determination. The Tax Court was the trier of the facts, which this Court is not. We agree with the statement of the Tax Court that whether or not reasonable cause exists for failure to file the required declaration is a question of fact to be decided upon the peculiar circumstances of each case. How far and to what extent a taxpayer may relieve himself of responsibility for the timely filing of tax returns or declarations of estimated tax by delegating that responsibility to another would seem to be a question which properly should be left to the Tax Court for decision. While it is apparent from the evidence and the findings of that court that the failure of the petitioners to file a timely declaration of estimated tax was due to their complete reliance upon Deeken to attend to all of their tax matters, we are not called upon to substitute our judgment for that of the Tax Court as to whether such reliance constituted reasonable cause for failure to file the declaration of estimated tax required of the petitioners by law.
 
 
 59
 'This Court, upon review, will not retry issues of fact or substitute its judgment for that of a trial court; and the power of a court or an administrative agency to decide doubtful questions of fact within the limits of its jurisdiction is not confined to deciding them correctly or in conformity with what might be the views of this court. (Many cases cited.)'
 
 
 60
 It may have been observed that most of the decisions that we have cited or quoted up to this point have referred to the weight that should be accorded to holdings by the Tax Court. As we have pointed out in a recent case, however, 'The weight accorded to District Court decisions * * * is the same as that given to those of the Tax Court'. Pacific Homes v. United States, 9 Cir., 1956, 230 F.2d 755, 759.
 
 
 61
 Finally, Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides:
 
 
 62
 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.'[2]
 
 
 63
 In the instant appeals, the transcript of testimony covers 225 pages. The witnesses were seen and heard by an experienced trial judge. We see no reason for disturbing his findings, which we hold was supported by substantial evidence.
 
 
 64
 6. The Incomplete, Incorrect, and Estimated Return, Filed Before the Due Date, as Extended, Did Not Preclude the Assessment of the 25% Penalty.
 
 
 65
 It has been suggested that there might be more merit to the Ferrari appeal than that of the Estate of Ferrando, inasmuch as there was an 'actual filing of an imperfect return on December 2, 1947'. As we have seen, the document itself indicated that it was signed on October 31, 1947, despite the fact that Cosgrove testified that he secured a written extension of thirty days from November 2, 1947, the original due date.
 
 
 66
 Be that as it may, the filing of an admittedly incomplete, inaccurate, and estimated return does not of itself relieve the tardy taxpayer of liability for a penalty. If such an excuse were accepted, it would put a premium upon belated and slipshod filing. A careless and neglectful taxpayer could wait until the last minute, present an amorphous return and escape the penalty. We do not believe that such is the genius and spirit of the Federal estate tax law. Congress did not intend that taxpayers should be permitted thus to play ducks and drakes with the collection of the Federal fisc.
 
 
 67
 A similar situation confronted the Court of Appeals for the Tenth Circuit in Sanders, supra, 225 F.2d at page 637. There it was said:
 
 
 68
 'The taxpayers filed tentative or skeleton returns which contained no detailed information as to income or deductions. The completed returns were not filed until a number of years after the due date. The taxpayers' books were not posted and an effective audit could not be made. The last payments from the United States were received by Sanders in 1949, and a return was not filed until September of 1952, after notice of deficiencies had been given and the liens had been filed. The record discloses sufficient evidence to sustain the decisions of the Tax Court in upholding the assessment of penalties and interest.'
 
 
 69
 In this connection, there comes to mind the oft-quoted admonition-- though not noticed in the present briefs-- by Mr. Justice Holmes in Rock Island, Arkansas & Louisiana Railroad Company v. United States, 1920, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188:
 
 
 70
 'Men must turn square corners when they deal with the government.'
 
 7. Conclusion
 
 71
 The general rule relating to a taxpayer's duty regarding the filing of a tax return is well stated in 3 A.L.R.2d 619:
 
 
 72
 'The filing of a tax return when due is a personal, nondelegable duty of the taxpayer; as a general proposition, it is no valid excuse for him to say that the matter was put in charge of an employee or accountant or attorney, no matter how trustworthy that person may be.'
 
 
 73
 Accordingly, we hold that the appellants have failed to discharge their burden of establishing that the failure to file a return was due to reasonable cause; that there is no reason for this Court to disturb the findings of the District Judge, to the effect that the failure of the four appellants to file proper estate tax returns was not 'due to a reasonable cause'; and that the defective return filed before the due date by the appellants Ferrari did not protect them from the assessment of the 25 per cent penalty.
 
 
 74
 The judgment of the Court below, holding that the four appellants are not entitled to recover the penalties collected from them by the appellee, are therefore affirmed.
 
 
 
 [1]
 See also Berlin v. Commissioner, 2 Cir., 1932, 59 F.2d 996, 997, certiorari denied, 1932, 287 U.S. 642, 53 S.Ct. 90, 77 L.Ed. 555; Lee v. Commissioner, 5 Cir., 1955, 227 F.2d 181, 184
 
 
 [2]
 See also United States v. Yellow Cab Co., 1949, 338 U.S. 388, 341, 70 S.Ct. 177, 94 L.Ed. 150