OPINION The question here in issue is whether petitioner’s gains on the sale of real estate are taxable as capital gains or as ordinary income. It is respondent’s contention that petitioner purchased and held the real properties primarily for sale to customers in the ordinary course of its business and that such properties are therefore excluded from capital assets under the provisions of section 1221 (1) and (2) of the Code of 1954.[1] In addition to the gains on the sales made during the taxable years in issue, respondent has included in petitioner’s ordinary income for those years the installment payments on sales made in the years 1946 to 1953, inclusive. Petitioner contends that any adjustment for those transactions of the prior years are barred by the statute of limitations and, further, that respondent, having accepted petitioner’s returns for the prior years in which the gains from such sales were reported as capital gains, is now estopped from treating them as ordinary income in the taxable years 1954 to 1958, inclusive. The quoted provisions of the statute granting favorable tax treatment to gains on the sale of capital assets held for 6 months or more being relief provisions are to be strictly construed. Corn Products Co. v. Commissioner, 350 U.S. 46 (1951); Commissioner v. P. G. Lake, Inc., 356 U.S. 260 (1958). Whether assets are held primarily for sale to customers in the ordinary course of a taxpayer’s trade or business and, consequently, are excluded from capital assets, is essentially a factual question to be determined from the evidence in each particular case. D. J. Phillips, 24 T.C. 435 (1955). Extensive litigation on this question has developed no single test of general applicability. Randolph D. Rouse, 39 T.C. 70 (1962). The term “primarily” as used in the statute has been construed to mean “substantial.” Rollingwood Corp v. Commissioner, 190 F. 2d 263; Joseph A. Earrah, 30 T.C. 1236; American Can Co., 37 T.C. 198. This construction permits recognition of the dual purpose concept inherent in some types of business operations. In petitioner’s real estate operations, its dual purpose is obvious. Petitioner acquired and held real estate for the dual purpose of both investment and sale to the public. And while the sales purpose, in some instances, may not have been predominant over the investment purpose, it was, nevertheless, substantial throughout the entire period under review. Petitioner’s gains from the sale of properties in some years exceeded its gains from all other sources. They were substantial in each of the years involved. On an overall basis the gains from real estate sales and from rentals, petitioner’s two principal sources of income, were about equal. It may be, as petitioner urges, that it acquired some of the properties for rental purposes and some as long-term investments with no immediate plan of offering them for sale. At the same time, however, it appears that petitioner was ready and willing to sell whenever favorable offers were received. For instance, as Curry testified, three properties were sold in 1954 because petitioner received what it considered “a very attractive offer.” The low cost rental properties which comprised a substantial portion of petitioner’s real estate holdings were usually sold when they required extensive repairs or when the sale values exceeded the rental values. Undeniably, they were held for sale after they were deemed unsuitable for rental. There is no question .that petitioner’s gains from the sale of real estate were profits arising from the everyday operation of a business as distinguished from casual or incidental sales which Congress intended to tax as ordinary income. Corn Products Co.v. Commissioner, supra. The parties attach considerable importance to petitioner’s activities in the Blue Valley area, particularly with respect to the 67-acre tract the petitioner leased to the railroad with an option to purchase. Petitioner argues that its reasons for the 'lease arrangement demonstrate that it did not hold the property for sale while respondent argues the opposite. It has been held that the existence of an option to purchase constitutes a continuing offer to sell. Joseph A. Harrah, supra. In weighing the effect of petitioner’s reasons for the lease of the Blue Valley tract to the railroad, we give attention to Ehrman v. Commissioner, 120 F. 2d 607 (C.A. 9, 1941), affirming 41 B.T.A. 652, certiorari denied 314 U.S. 668 in which the court said at page 610: We fail to see that the reasons behind a person’s entering into a business— whether it is to make money or whether it is to liquidate — should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is — were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception in the definition of capital assets in the statute above quoted — that is, that it constituted “property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.” See also American Can Co., 37 T.C. 198. In Joseph A. Harrah, supra, we said (p. 1241): While the underlying purpose of the original acquisition of property is to be given consideration, it is clear that such purpose may change over a given period of time. Where this has been the ease, the original purpose necessarily must give way to the purpose for which the property is held at the time of its sale. Mauldin v. Commissioner, 195 F. 2d 714 (C.A. 10, 1952), affirming 16 T.C. 698 (1951). * * * In the Harrah case we quoted from Rollingwood Corp. v. Commissioner, supra, as follows: Suppose the taxpayer in the instant case intended to rent the houses for as long as he was required to do so under existing regulations and then to sell them. Or suppose his intention was to pursue whichever of these activities proved to be the most profitable, that is, if the rental market were good he would continue to rent but if the sales market were high he would sell. In either of these suppositions we think it is fair to say that one of the essential purposes (in acquiring or holding the houses) is the purpose of sale. Under such circumstances, if the taxpayer does dispose of the houses by sale, is it within the legislative purpose to allow him to treat the proceeds of these sales as a capital gain? We think not. The petitioner here was not in the process of liquidating its real estate business. Cf. Frieda E. J. Farley, 7 T.C. 198. One of the cases upon which petitioner relies strongly is James G. Hoover, 32 T.C. 618. In that case, the taxpayers, James and Charles Hoover, were the individual partners in a partnership engaged primarily, and over a long period of time, in the construction business. James individually was engaged principally in tlie contracting business and was active in the management and operation of a number of companies engaged in various activities both related and unrelated to his contracting business. The other partner, Charles, had no income except his share of the distributable income of the partnership. The real estate sales in dispute were made either by the partnership or by James individually. The partnership reported ordinary income of approximately $70,000 in 1953, $30,000 in 1954, and a loss in 1955. It reported long-term capital gains from the sale of real estate in those years of approximately $13,700, $6,100, and $5,300, respectively. James reported ordinary income of approximately $99,000 in 1953, $103,000 in 1954, and $95,500 in 1955. In our opinion in that case we said (pp. 627-628) : About the strongest factor supporting petitioners is the relation of petitioners’ other income to the gains derived from the sales of realty. Generally, during the years in question the income of James and the partnership from normal business activities far exceeded income from sales of realty. * * * We think the instant case is to be distinguished from Hoover in that the taxpayers there were not engaged exclusively (or at all, as found), in the real estate business, but purchased real estate only incidentally and as investments of surplus funds. Here the purchase, sale, and rental of real estate was petitioner’s only business. Also distinguishable are such cases as D. L. Phillips, 24 T.C. 435, Nelson Parry, 13 T.C. 8, and Randolph D. Rouse, 39 T.C. 70, where the taxpayers conducted their real estate business with a clearly defined separation of properties held for sale and properties acquired and held for investment. Some of petitioner’s properties were rental properties and some were not, but as we have found, petitioner apparently was willing at all times to sell any of them at a sufficiently profitable price. We are of the opinion that respondent did not err in determining that petitioner’s gains on the sale of real estate are taxable as ordinary income. The petitioner alleges in his petition that — ■ (g) The Commissioner is estopped from asserting that gains derived from installments received by petitioner during the years involved were taxable as ordinary income rather than as capital gains from the sale of capital assets, by virtue of the prior determinations of him and his agent. In its brief, the petitioner reaffirms the position taken in its petition and further submits that the properties which it sold in the prior years, 1947 to 1953, inclusive, like those sold in the 1954-58 period, were held for investment and the production of income and not for sale. Petitioner’s operations in tbe prior years were, in fact, conducted in about tbe same manner as in tbe 1954 — 58 period. The facts offer no basis for an estoppel. Respondent has not proposed any adjustment of petitioner’s tax liability for the prior years 1947 to 1953, inclusive. Those years are admittedly barred by the statute of limitations. What respondent has done is to determine petitioner’s tax liability on income received during the taxable years now under consideration. That in so doing he may have reversed his prior action with respect to the payments received on the installment sales in question or that, with even less significance, he accepted without question petitioner’s earlier returns in which the payments were treated differently does not in any manner offset the validity of his present determination or afford any basis for estoppel. See Automobile Olub of Michigan, 20 T.C. 1033, affd. 230 F. 2d 585, affd. 353 U.S. 180; Laura Massaglia, 33 T.C. 379, affd. 286 F. 2d 258. In the Massaglia case, the Court said (p. 262): But neither the duty of consistency, nor the principles of equitable estoppel bind the Commissioner to unauthorized acts of his agents, Sanders v. Commissioner, 10 Cir., 225 F. 2d 629, nor preclude him from correcting mistakes of law in the imposition and computation of tax liability, including the power to retroactively correct his rulings, regulations and decisions upon which taxpayers have relied. * * * The petitioner has suffered no detriment as a result of any action taken by respondent in accepting the returns as filed by petitioner for the prior years. Decision will be entered under Rule 50. SEC. 1221. CAPITAL ASSET BEEINED. For purposes of this subtitle, the term “capital asset” means property held by the taxpayer (whether or not connected with his trade or business);, but does not include— (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business ; (2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;