ABRAHAM C. GROSSMAN and CHANA GROSSMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Grossman v. Commissioner
Docket No. 22974-82.
United States Tax Court
T.C. Memo 1986-439; 1986 Tax Ct. Memo LEXIS 169; 52 T.C.M. (CCH) 484; T.C.M. (RIA) 86439; September 15, 1986. Richard L. Goldman, for the petitioners. Robert Schneps and Laurence Ziegler, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioners' 1975 Federal income tax in the amount of $117,315.16 and an addition to tax of $17,597.27 under section 6651(a)(1). [1] *170 The parties have settled all issues giving rise to the underlying deficiency in tax. The remaining issues for decision are: (1) whether petitioners' failure to timely file their 1975 tax return was due to reasonable cause; and (2) if not, whether in determining the amount of the addition to tax for late filing under section 6651(a)(1), the timely mailing-timely filing rule of section 7502(a) applies. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation of facts and attached exhibits are incorporated herein by this reference. Abraham C. Grossman and Chana Grossman, husband and wife, resided in Brooklyn, New York at the time they filed their petition. [2] They filed their 1975 tax return late, citing the following as justification for the late filing. Petitioner owned and operated a 49 bed nursing home located in the Bronx, known as Parkway Manor Nursing Home (Parkway Manor). By Agreement dated March 9, 1970 (the *171 Agreement), petitioner agreed to sell a 50 percent ownership interest in Parkway Manor to Abraham and Lucy Gelbfish. Petitioner subsequently refused to convey an interest in Parkway Manor to the Gelbfishes; and beginning in 1971, protracted rabbinical arbitration and court litigation ensued. Parkway Manor was closed on July 15, 1974. On July 8, 1974, petitioner opened and began operating the Bruckner Nursing Home (Bruckner). Bruckner's operations were approximately 4-fold those of Parkway Manor. Ultimately, in May, 1975, the dispute between petitioner and the Gelbfishes was resolved. Petitioner was ordered to pay the Gelbfishes $315,000; payment was to be made over a period of time (part in 1975) pursuant to a stipulation of settlement dated October 9, 1975. The Gelbfishes released all rights they had in Parkway Manor and Bruckner. Petitioner's accountant, Isidore Eichenthal, was undecided as to the proper tax treatment of petitioner's obligation to the Gelbfishes. [3] He realized that the payment to the Gelbfishes could be a material item, in that it could potentially offset most of the profit earned by Bruckner and thereby reduce petitioners' 1975 tax liability. [4] Rather *172 than prepare an incorrect return, Mr. Eichenthal obtained extensions of time for filing so that the matter could be thoroughly examined. Three extensions of the April 15, 1976 due date were granted; the final extended date for petitioner's 1975 return was October 15, 1976. [5]
Shortly after Mr. Eichenthal had prepared the financial reports of Bruckner (in May, 1976), he spoke with petitioner's lawyer, Mr. Zafrin, in order to obtain additional information about the settlement stipulation. Mr. Eichenthal hoped, by understanding *173 the facts and circumstances surrounding the settlement, to determine the tax consequences of petitioner's payments to the Gelbfishes. In June, 1976, however, Mr. Eichenthal concluded that he needed the assistance of a tax lawyer. Accordingly, on July 9, 1976, petitioner and Mr. Eichenthal met with Richard Goldman, a tax attorney. On August 3, 1976, Mr. Goldman wrote to Mr. Eichenthal as follows: Dear Mr. Eichenthal: We cannot tell how to advise without seeing Mr. Grossman's file. He was going to send it here, but we have not received it. Without it, it is difficult to go behind the stipulation although this is what (in effect) the Internal Revenue Service will do, to see how to treat the payments for tax purposes. Also, we would like to receive a retainer to apply against our charges at normal rates, and to cover any out-of-pocket disbursements. Sincerely, (signed) Richard L. Goldman, P.C. P.S. -- Please notice that I shall be away from this Sunday evening for 2 weeks, in case you would like to get the file to me to examine beforehand. On September 8, petitioner mailed Mr. Goldman a retainer for his services. On September 9, Mr. Goldman, who was unaware that *174 petitioner had sent him a retainer, left on a business trip and did not return until September 27. Mr. Eichenthal and petitioner both observe the Jewish holidays. In 1976, October 4 was a Jewish holiday, as was the period of October 9-17. After the October 4 holiday, preparations had to be made for the holiday occuring during the October 9-17 period; therefore, Mr. Eichenthal did no work from October 4 through October 17. On October 13, Mr. Goldman spoke with Mr. Zafrin requesting that Mr. Zafrin review petitioner's files and send Mr. Goldman copies of documents which were relevant to petitioner's tax question. On November 3, Mr. Zafrin forwarded to Mr. Goldman the documents Mr. Goldman had requested. On November 8, Mr. Goldman issued an opinion letter, which he supplemented on November 16. Mr. Eichenthal then completed petitioner's 1975 tax return and sent the return to them for execution on November 18. Petitioner and his wife signed the return on December 15, 1976; petitioner hand delivered the return to Mr. Eichenthal on the same day. The return was mailed to respondent on December 15, 1976, and was received by respondent on January 6, 1977. Petitioner claims that his *175 failure to timely file his 1975 tax return was due to reasonable cause and that he therefore is not liable for any additions to tax for late filing. Specifically, petitioner justifies his late filing because of his reliance on Mr. Eichenthal to prepare a proper return. He also contends that he was distracted due to (1) a State investigation of the nursing home industry which resulted in his being served with a "flood" of subpoenas, and (2) his observance of the Jewish holidays. Finally, petitioner argues that in any event the mailing date of the return, December 15, is the filing date, so that if the late filing is not deemed excusable, the amount of the addition for late filing should be 10 percent of the correct tax. Respondent claims that petitioner is liable for an addition to tax for late filing in the amount of 15 percent of the correct tax because (1) the return was received two and a fraction months late, and (2) petitioner's failure to timely file was not due to reasonable cause. OPINION Section 6651(a)(1) provides that where a return is not filed by the date prescribed therefor *176 (including extensions), there shall be added to the amount required to be shown as tax on the return 5 percent of the amount of such tax for each month or fraction thereof during which the return is late up to a maximum of 25 percent. In order to avoid the addition for late filing, the taxpayer must show that the late filing was due to reasonable cause and not willful neglect. The term "reasonable cause" is not defined in the statute. However, the applicable Treasury regulations provide that if the taxpayer exercises ordinary business care and prudence and nevertheless is unable to file the return within the prescribed time, then the delay will be considered as due to reasonable cause. Section 301.6651-1(c)(1), Proced. & Admin. Regs. Respondent does not argue that petitioner's failure to timely file his 1975 return was due to willful neglect. The applicability of the addition for late filing therefore depends on whether petitioner's failure was due to reasonable cause. In our opinion, petitioner did not exercise ordinary business care and prudence. Petitioner's procrastination and his apparent cavalier attitude contributed largely to the late filing of the 1975 return. Petitioner *177 delayed in engaging the services of a tax attorney; he delayed in paying the attorney a retainer; and he delayed in furnishing the attorney with necessary information. Once the information was furnished, the attorney was able to render an opinion in 13 days. This Court and other courts have considered whether a taxpayer should be excused from the addition for late filing due to his reliance on a professional adviser. Haywood Lumber and Mining Co. v. Commissioner,178 F.2d 769 (2d Cir. 1950), modifying 12 T.C. 735 (1949); Ferrando v. United States,245 F.2d 582 (9th Cir. 1957); Estate of Lammerts v. Commissioner,456 F.2d 681 (2d Cir. 1972), affg. 54 T.C. 420 (1970) on this issue; Estate of DiPalma v. Commissioner,71 T.C. 324 (1978). The outcome as to whether the addition for late filing should be imposed frequently has turned on the distinction between whether the taxpayer relied on advice that no return was required (which may be reasonable cause for failing to file timely), or whether *178 the taxpayer relied on the adviser to timely file returns, where the taxpayer knows that a return must be filed (which is not reasonable cause). See, e.g., Estate of Duttenhoffer v. Commissioner,410 F.2d 302 (6th Cir. 1969), affg. per curiam 49 T.C. 200 (1967). Where a taxpayer relies on his adviser to timely file a return, a further distinction was made as to whether the taxpayer takes affirmative steps to ensure that the return is timely filed (which is reasonable cause for failing to file timely), or whether the taxpayer delegates the obligation to file and then sits passively by, taking no further interest in the matter (which is not reasonable cause). Compare Estate of DiPalma v. Commissioner,supra with Estate of Lammerts v. Commissioner,supra.
As we noted in DiPalma, the cases in this area: do no more than set forth a general rule * * * and do not abrogate the principle that whether the failure to file on time was due to reasonable cause is primarily a question of fact to be determined from all of the circumstances in a particular case. [Citations omitted.] Under these circumstances, a *179 review of the numerous decisions on the issue "pro and contra [is] of little help." [Citations omitted. 71 T.C. at 327.] The Supreme Court recently resolved much of the uncertainty in this area. In United States v. Boyle,469 U.S. 241 (1985), the Court held that an executor who relied on an attorney to timely file an estate tax return could not avoid imposition of the late filing addition where, due to the attorney's clerical oversight, the return was filed three months late. The burden to file a timely return is that of the taxpayer, and not his agent. Reliance on the advice of a lawyer or accountant may constitute reasonable cause for failing to file a timely return, where, for example, the taxpayer receives advice concerning a question of law, such as advice that he realized no taxable income and therefore no return is required. Here, petitioner received no such advice. On the contrary, petitioner knew that a return was required to be filed and that the last day for filing was October 15, 1976. We are unpersuaded by petitioner's argument that *180 the late filing was reasonable because he was distracted by the nursing home investigation or because of his observance of the religious holidays. Thus, we hold that petitioner's late filing was not due to reasonable cause. The only question remaining is the appropriate amount of the addition to tax under section 6651(a). Pursuant to section 7502, if respondent receives a return after the prescribed date for filing, but the return is enclosed in an envelope bearing a United States postmark date before the prescribed filing date, the return is deemed filed on the date of postmark. Section 301.7502-1(c), Proced. & Admin. Regs., provides that if the postmark on the envelope is made other than by the United States Post Office, then the timely mailing-timely filing rule set forth in section 7502 applies only if (1) the date of the postmark is on or before the last date for filing, and (2) the return is received not later than the time it ordinarily would have been received if it had been postmarked by the United States Post Office on the last date prescribed for filing. We have held that the *181 timely mailing-timely filing rule is inapplicable to delinquent returns. Sanderling v. Commissioner,67 T.C. 176 (1976), affd. and revised on other issues 571 F.2d 174 (3d Cir. 1978). Where a return is mailed after its due date (including extensions), it is deemed filed on the date of receipt rather than on the date of mailing. The "prescribed date" for purposes of both sections 6651 and 7502 is the due date of the return, and not as petitioner argues, each monthly increment following the due date of the return. Sanderling v. Commissioner,supra.
Petitioner concedes that he mailed his 1975 return after the October 15 due date. The timely mailing-timely filing rule therefore does not apply. When respondent received the return on January 6, 1977, two and a fraction months had elapsed since the prescribed filing date. The applicable rate of the addition to the tax for late filing under section 6651(a) is therefore 15 percent. Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in 1975.↩
2. Chana is a party herein solely because she filed a joint return with her husband for 1975; therefore Abraham will be referred to as petitioner.↩
3. Mr. Eichenthal considered the alternatives of treating the payment as (a) a deductible business expense, (b) a capital loss, or (c) a nondeductible capital investment. If it were a capital expenditure, additional deductions for depreciation and investment tax credit were possibilities. The timing of any deduction was also unclear because Bruckner used the accrual method of accounting whereas petitioner used the cash method. ↩
4. Bruckner's books for 1975 were closed in May, 1976. At that point, Mr. Eichenthal determined that Bruckner's 1975 profits approximated $349,000. ↩
5. October 15, 1976 was the maximum extended date allowable under section 6081(a).↩