ESTATE OF SYLVIA S. BURING, DECEASED, (SAMUEL KORNBERG AND NAT BURING, CO-EXECUTORS), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Buring v. Commissioner
Docket No. 9176-76.
United States Tax Court
T.C. Memo 1985-610; 1985 Tax Ct. Memo LEXIS 24; 51 T.C.M. (CCH) 113; T.C.M. (RIA) 85610; December 16, 1985. P. K. Seidman,Raymond M. Shainberg,Ronald m. Harkavy, and Saul C. Belz, for the petitioner. Vallie C. Brooks, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's liability for gift tax and additions to tax as follows: *25 Additions to Tax
Calendar Quarter Ended
Deficiency
Sec. 6651(a)(1) [1]
March 31, 1971
$171,172.02
$42,793.01
June 30, 1971
11,886.89
2,971.72
Petitioner has conceded liability for the deficiencies in gift tax, so the sole issue before us is whether petitioner's failure to file gift tax returns was "due to reasonable cause and not due to willful neglect" within the meaning of section 6651(a)(1). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Sylvia Stark Buring (Sylvia) was born on May 13, 1911, and died on November 24, 1972. Nat Buring (Nat), Sulvia's husband, and Samuel Kornberg serve as co-executors of her estate, the petitioner in this action. An estate tax return was filed on behalf of the Estate of Sylvia S. Buring (petitioner) by its co-executors on July 24, 1974. Prior to *26 her death, Sylvia S. Buring resided with her husband in Memphis, Tennessee. During their marriage, Nat and Sylvia were the principal stockholders and officers in a successful family corporation known as Nat Buring Packing Company, Inc. In 1967, Holiday Inns, Inc., acquired ownership of all the outstanding stock of Nat Buring Packing Company, Inc., in exchange for Holiday Inns, Inc., stock. Thereafter, Nat and Sylvia operated the former family corporation as a wholly owned subsidiary of Holiday Inns, Inc.
For a substantial period of time before her death, Sylvia and Nat engaged in a pattern of making gifts to members of their family for which gift tax returns were filed. During 1952 Sylvia gave $5,000 cash to the trustee for each of three trusts established for the benefit of her three sons, Jerome (Jerry) Buring, Arthur Buring, and Raymond Buring. At the time, Sylvia and Nat also conveyed a building, which was leased to Nat Buring Packing Company, Inc., to the trusts established for their sons, each receiving an undivided one-third interest. These gifts were reported on a gift tax return filed by Sylvia in August 1958. The value of the gift of the undivided interests in the *27 building was reported as zero. In 1961, Sylvia filed gift tax returns for the taxable years 1952 through 1960, in which she reported as gifts rent paid by the family business to the trusts in excess of the fair rental value. These returns were filed pursuant to an agreement with the Commissioner collateral to Tax Court cases not involved here. During late 1970, Sylvia made equal gifts of Holiday Inns, Inc., stock (acquired in exchange for Nat Buring Packing Company, Inc., stock) and State of Israel bonds to various family members including her three sons and their wives and children. She reported the total value of these gifts as $100,465 on the gift tax return received by the Commissioner's office in April 1971. Sylvia made similar gifts of Holiday Inns, Inc., stock to family members, including her three sons, in late 1971. These gifts were reported to have a total value of $126,516 on the gift tax return receibed by the Commissioner's office in February 1972 for the calendar quarter ended December 31, 1971.None of the above gifts are directly involved in the present controversy. Sylvia also made advances to her son, Jerry, for which no gift tax returns were filed. During *28 1970 Sylvia advanced $50,000 cash to her son Jerry. This advance was not reported as a gift on the gift tax return for the calendar year 1970 filed by Sylvia in April 1971. [2]
Sylvia made further cash advances to Jerry in January and February 1971 totaling $296,500. Also during January 1971, a check was drawn on Nat and Sylvia's joint bank account payable to the order of First American Bank, Memphis, Tennessee, representing the payment of principal and interest on loans made by the bank to Jerry. One half of this loan repayment, $119,214, was advanced by Sylvia. Furthermore, on January 7, 1971, Sylvaia and Nat assigned 13,500 shares of Holiday Inns, Inc., stock to Jerry of which 6,750 shares were assigned by Sylvia individually. At the same time, Sylvia, Nat, and Jerry executed a document entitled "AGREEMENT *29 TO LOAN CORPORATE STOCK" that characterized the assignment of stock to Jerry as a loan. In the agreement Jerry promised as follows: Borrower shall on or before the 7th day of January, 1972 repay or set over, transfer and assign unto Lenders, or cause at Borrower's sole expense to be transferred and assigned unto Lenders 13,500 shares of the common capital stock of the said Holiday Inns, Inc. together with any additional shares that may accrue hereafter as a result of any stock dividends, stock splits or other adjustments of capitalization of the said Holiday Inns, Inc.--one--half (1/2) of the said 13,500 shares of said capital stock, together with any of said accretions thereto to be transferred and assigned unto Nat Buring and the other one-half (1/2) thereof unto Sylvia Buring. The value of the 6,750 shares of Holiday Inns, Inc., stock transferred by Sylvia under this agreement was approximately $248,116. Sylvia did not file a gift tax return reporting the purported loan of stock or the cash advances made both to Jerry and to the bank on Jerry's behalf in January and February as gifts made in the first calendar quarter of 1971. If such a return were to have been filed, it *30 would have been due, excluding any extensions, on May 15, 1971. In June 1971, Sylvia advanced 900 additional shares of Holiday Inns, Inc., stock to Jerry. Jerry promised to "repay" the 900 shares by June 3, 1972, in a document identical to the earlier stock loan agreement. The value of the 900 additional shares was approximately $42,836. Sylvia did not file a gift tax return for the calendar quarter ending June 30, 1971. A return for this period would have been due, excluding any extensions, on August 15, 1971. The following table summarizes the advances Sylvia made to Jerry: Amount or Value
1970
cash
$50,000
January 1971
cash
35,000
cash
26,500
repayment of bank
loan and interest
119,214
cash
62,500
6,750 shares of stock
248,116
cash
97,500
February 1971
cash
75,000
June 1971
900 shares of stock
42,836
Total
$756,666
Jerry used a portion of the advances to cover substantial commodity trading losses. Jerry and his wife filed a joint Federal income tax return for the taxable year 1970. On the return they reported short term commodity losses in the amount of $881,822 on a separate schedule *31 appended to Schedule D, Sales or Exchanges of Property. Jerry also used the stock advanced by his parents to generate cash. On their joint Federal income tax return for the taxable year 1971, Jerry and his wife included a statement entitled "Statement Regarding Short Sale Securities." This statement indicates that Jerry sold 15,300 shares of Holiday Inns, Inc., stock short, and that the stock had been borrowed. The number of shares reported as being sold short on the return corresponds to the total number of shares advanced by Sylvia and Nat under the stock loan agreements. The statement indicates that Jerry received $581,903.21 from the broker as payment for the short sale. Sometime prior to April 15, 1971, Sylvia's accountant became aware of the advances being made by Sylvia.The accountant, who was also an attorney, had served the family business for many years and also advised Nat and Sylvia on personal financial matters. The accountant inquired whether the large advances of cash to Jerry in 1970 and January 1971 were intended to be repaid. Upon learning that Sylvia considered the advances to be loans, the accountant suggested that Sylvia speak to independent counsel and *32 have the loans formalized because of their large size and to make her intentions clear. The accountant did not advise Sylvia to file a gift tax return reporting the advances because of her indication that they were loans, not gifts. Sylvia ultimately consulted her attorney, who prepared a promissory note to be signed by Jerry. On August 30, 1971, Jerry signed the note requiring him to pay Sylvia $460,714.14, a sum approximating the total cash advances Sylvia made to Jerry during 1970 and early 1971. The note required the payment of interest in annual installments with the principal due in full on September 1, 1981. Jerry signed a similar note requiring payment of the same amount on the same terms to Nat. Jerry made one principal payment in the amount of approximately $5,000 to Sylvia during 1971. No other payments were made on the promissory note, nor was the Holiday Inns, Inc., stock which he borrowed redelivered or repaid to Sylvia. In March 1971 Sylvia Buring executed a will. Jerry was named a beneficiary of a one-sixth interest in Sylvia's residuary estate. The provision in the will referring to the residuary bequest also contained the following proviso: further provided *33 that there shall be deducted from the * * * share hereby given, bequeathed and devised to my son, Jerry, the balance of the sums or amounts loaned or advanced to him during my lifetime by my husband or me or by both of us and not repaid prior to the completion of the administration of my estate by my Executors or Executor whether or not such balance then constitutes a legal or enforceable obligation. By codicil dated December 1, 1971, Sylvia amended the above quoted language to make specific reference to the Holiday Inns, Inc., stock assigned by her to Jerry. The amended language provided that, if the stock were not repaid or redelivered, the fair market value of the stock at Sylvia's death would be deducted from the amounts to which Jerry would otherwise be entitled as a residuary beneficiary. Sylvia Buring died in November 1972. The co-executors of her estate filed a Federal estate tax return dated July 23, 1974. The return listed the value of the promissory note from Jerry as zero at the time of Sylvia's death although the note still had an unpaid principal balance of approximately $455,000. The return also contained a supplementary schedule of persons receiving benefits *34 from the estate. The schedule listed the names of several persons, including two of Sylvia's sons, Arthur and Raymond, along with the amounts each was to receive. The schedule also contained the following notation: "(Another son, Jerry Buring, is a named beneficiary under the Will. However, the amount he owes exceeds any distributable share to which he would be entitled.)" On January 2, 1975, Jerry signed a document entitled "Personal Statement" addressed to First American Bank, Memphis, Tennessee. This document contained a form balance sheet and space for other personal finacial information to be used for the purpose of procuring and maintaining credit with First American Bank. In the space provided in the "Liabilities" section of the balance sheet for "Notes payable to others" Jerry made the notation "Sylvia Buring" and entered the amount "$455,339.14." In the space labeled "Other debts - itemize" Jerry included "Sylvia Buring Estate 7650 shares of Holiday Inn Stock." In his statutory notice of deficiency, the Commissioner determined that the amounts of $171,172.02 and $11,886.89 were owed as gift tax for the calendar quarters ended March 31, 1971, and June 30, 1971, respectively. *35 The gift tax deficiencies were calculated based upon advances made to Jerry Buring during those periods totaling $708,830.16 and $42,835.63, respectively. The total amount of the gifts to Jerry Buring determined in the Commissioner's statutory notice of deficiency, $751,665.79, approximates the sum of all cash advances made by Sylvia to Jerry and the value of the Holiday Inns, Inc., stock lent to Jerry at the time it was lent less the lone $5,000 principal payment made by Jerry. The Commissioner also imposed additions to tax totaling $45,764.73 for failure to file gift tax returns under section 6651(a)(1). OPINION The petitioner has conceded liability for the deficiencies in gift tax. The sole issue before us is petitioner's liability for failure to file gift tax returns for the calendar quarters ended March 31, 1971, and June 30, 1971. The determinations of the Commissioner in his statutory notice of deficiency enjoy a presumption of correctness. Therefore, the burden of proof falls upon petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Unless otherwise excluded, any individual who makes any transfer by gift during any calendar quarter *36 is required to file a return for that quarter with respect to the gift tax imposed by section 2501. Sec. 6019. Section 6651(a) imposes an addition to tax for the failure to file a return required by section 6019, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The addition to tax imposed is calculated as 5 percent of the tax required to be shown on such return for each month past the return due date a return is not filed, to a maximum of 25 percent. Sec. 6651(a)(1). To avoid the addition to tax, the taxpayer must prove both (1) that the failure was due to "reasonable cause," and (2) that the failure did not result from "willful neglect." Sec. 6651(a); United States v. Boyle,469 U.S.    , 105 S. Ct. 687, 690 (1985). "Reasonable cause" that would excuse the failure to file a return is defined as the exercise of "ordinary business care and prudence." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Recently, the U.S. Supreme Court sought to clarify the meaning of "reasonable cause" in *37 United States v. Boyle,supra. In Boyle the Court addressed a situation in which the executor of an estate challenged the addition to tax for failure to file a return under section 6651(a)(1). The executor relied upon counsel to timely file a tax return for the estate. The Seventh Circuit affirmed the judgment of the district court holding that the executor had demonstrated reasonable cause by his reliance on the advice of counsel. Boyle v. United States,710 F.2d 1251 (7th Cir. 1983). The Supreme Court reversed, holding that reliance on an agent does not excuse the failure to make a timely filing of a tax return. United States v. Boyle, 105 S.Ct. at 693-694. In attempting to develop a "bright" line rule to deal with cases where the taxpayer did not meet a filing deadline, the Supreme Court stated: "Congress has placed the burden of prompt filing on the [taxpayer], not on some agent or employee * * *. * * * That the [agent] was expected to attend to the matter does not relieve the principal of his duty to comply with the statute." *38 105 S.Ct. at 692-693. The Supreme Court, in Boyle, went to great pains, however, to distinguish the result that would follow where a taxpayer relied on his tax advisor to determine whether a return should be filed at all. 105 S.Ct. at 693. We are confronted with just such a case: Sylvia consulted with her accountant of long standing, who, after being fully apprised of the situation, did not advise her to file gift tax returns with respect to the advances made to Jerry. [3] We find Sylvia's reliance upon the advice of her accountant that it was unnecessary to file a return constitutes reasonable cause for the failure to file a return, even if such advice was wrong. 105 S.Ct. at 693. The Supreme Court, in Boyle, provided the rationale for our holding in the following language: When an accountant or attorney advises a taxpayer on a matter *39 of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," * * * would nullify the very purpose of seeking the advice of a presumed expert in the first place. "Ordinary business care and prudence" does not demand such actions. [105 S.Ct. at 693.Citation omitted; emphasis in original.] Sylvia consulted with counsel concerning the cash and stock advances made to Jerry. After disclosure of all relevant information concerning the advances, including, most importantly, that Sylvia expected these advances to be repaid, counsel suggested that Sylvia seek the aid of other independent counsel to formalize these loans. She subsequently did so. We do not think that "reasonable cause" within the meaning of section 6651(a)(1) requires more. We find that petitioner has met its burden of proof with respect to showing reasonable cause for the failure to file gift tax returns for the advances to Jerry. *40 Ferrando v. United States,245 F.2d 582, 587 (9th Cir. 1957); Sanders v. Commissioner,225 F.2d 629, 636 (10th Cir. 1955), cert. denied, 350 U.S. 967 (1956). Petitioner must also demonstrate that Sylvia's failure to file gift tax returns did not result from willful neglect. Sec. 6651(a)(1). "Willful neglect" for these purposes may be defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, 105 S.Ct. at 690. While the arguments of the parties focused on the "reasonable cause" element of section 6651(a)(1), we, nevertheless, find that the evidence demonstrates the requisite lack of "willful neglect." The stock and cash advances were ultimately properly documented as loans. Jerry apparently recognized his continuing liability for the advances almost four years after they were made, as evidenced by the fact that they were listed as liabilities on the form supplied by First American Bank. Although the estate tax return filed on behalf of petitioner shows the advances to have no value as of the date of death, there is no evidence to suggest that they were considered to be worthless *41 or to be gifts at the time of their making. We will not make the inference desired by respondent that Jerry's obligation to repay was worthless because his financial situation at the time of the advances was such that he did not have the resources to repay the advances. Jerry apparently needed the advances, in part, to cover large losses incurred in commodities trading. We cannot say that his next endeavor of a similar nature could not result in equally large gains, thereby enabling him to pay off the advances.We do not think that the likely possibility that Jerry could not have obtained the same advances from an independent lender based on a business judgment as to his ability to repay, standing alone, indicates that the advances in question were gifts. We also refuse to infer, as respondent would have us do, that Sylvia's prior history of gift giving, particularly her agreement with the Commissioner to recharacterize excessive rentals as gifts to her sons, indicates her awareness of the gift tax laws. Following respondent's argument to its conclusion, Sylvia's knowledge of the gift tax would demonstrate that the documentation of Jerry's obligation to repay the advances was *42 simply an artifice to recast a taxable gift into a nontaxable loan. The evidence does not support this conclusion. All the evidence points to a legitimate loan with the full expectation of repayment. Sylvia advanced cash and stock to her son. Sylvia's intention that these advances ve repaid is evidenced by the contemporaneous stock loan agreement, signed by Sylvia, Nat, and Jerry, and by the promissory note representing a promise to repay the cash advances executed by Jerry a few months after the advances were made. Our holding should not be read to exhalt the form of such transfers over their substance. However, where all of the evidence points to the characterization of the advances as loans and there is no evidence of an intentional failure to file a gift tax return, the addition to tax for failure to file a return under section 6651(a)(1) should not be imposed. Where, however, the evidence suggests that a purported loan is a disguised gift and the taxpayer's attempt to camouflage his actions indicates an intentional or conscious failure, or a reckless indifference to the duty to file a return, we will not hesitate to uphold the Commissioner's determination of the section *43 6651(a)(1) addition to tax. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, and attendant regulations as amended and in effect for the relevant years, and all Rule references are to this Court's Rules of Practice and Procedure.↩
2. The $50,000 advance made in 1970 was included in the Commissioner's statutory notice of deficiency for the calendar quarter ended March 31, 1971. Since petitioner has conceded the full amount of the gift tax deficiency, and since the addition to tax under sec. 6651(a)(1)↩ is the sole issue before us, we consider this minor factual discrepancy to be of no consequence.
3. Sylvia conlsulted her accountant for advice.He rendered such advice to her. She filed no returns.However, her accountant, who testified, did not affirmatively state that he advised her not to file returns. We, therefore, infer from the facts that he did not advise her to file returns.↩